Argued July 6, affirmed August 10, 1960

# STATE OF OREGON *v.* BRADY
### 354 P. 2d 811

M. M. Orona, Lebanon, argued the cause for appellant. On the brief were Morley, Thomas & Orona, Lebanon.

Courtney Johns, District Attorney for Linn County, Albany, argued the cause for respondent. With him on the brief was James Lewelling, Deputy District Attorney, Albany.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan and Holman, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court, based upon a jury's verdict, which adjudged the defendant guilty of the crime proscribed by ORS 483.992 (2), that is, driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor.

The defendant-appellant presents the following three assignments of error:

> "Defendant alleges that the trial court erred in admitting evidence of the results of a blood alcohol determination of the defendant without first establishing that the person drawing the blood was a duly licensed physician or a person acting for such physician as required by ORS 483.630 (2)."

> "Defendant alleges that the trial court erred in admitting into evidence State's Exhibit 3, the results of the blood alcohol determination in the

absence of a proper foundation to qualify this evidence."

"Defendant alleges that the admission into evidence of the results of the blood alcohol determination, State's Exhibit 3, in the absence of the person who took this sample deprived him of his constitutional right of confrontation."

ORS 483.630, which is cited in the first assignment of error, reads:

"(1) If any person is arrested while operating a motor vehicle and is charged with then being under the influence of intoxicating liquor, the officer or person making the arrest may, upon written consent of the arrested person, cause a chemical analysis to be made of the blood * * * of the arrested person, in order to determine the amount of alcohol then in such person's blood.

"(2) In order to cause a chemical analysis of the blood to be made under subsection (1) of this section, only a duly licensed physician or a person acting for such physician, at the request of the officer or person making the arrest, may withdraw blood. * * *

* * *

"(5) For the purposes of this section:

* * *

"(c) Evidence that there was, at the time, .15 percent or more by weight of alcohol in the defendant's blood is prima facie evidence that the defendant was under the influence of intoxicating liquor."

We believe that the three assignments of error present the same basic contentions: that the evidence does not show that the blood sample which was drawn from the defendant was taken by "a duly licensed physician" and that since the person who drew the sample was not produced by the state to describe

the drawing of the blood error was committed. We will consider the three assignments of error concurrently.

February 27, 1959, at 7:10 p. m., Stanley Barron, an officer in the Oregon State Police, saw the defendant start his car and drive it away from a tavern in Foster without illuminating his headlights. The officer thereupon pursued the defendant for the purpose of directing him to turn on his lights; but before he overtook the defendant he noticed that the car was driven in an erratic manner. Presently the officer ordered the defendant to stop and then arrested him upon the charge which we have mentioned. Although there lay adjacent to the pavement a shoulder, the defendant, upon being directed to stop, did not drive to the shoulder but brought his car to a halt upon the pavement. According to the officer, the defendant (1) swayed in walking, (2) slurred his speech, (3) had "very poor coordination of his hands," (4) was unsteady upon his feet, (5) had upon his breath "a very strong odor of liquor," and (6) had bloodshot eyes.

At the time of the arrest the defendant told the officer that a few hours previously he and two companions had consumed a bottle of whisky. He also told the officer that later he "had drank a beer" in the Foster tavern. The officer informed the defendant that he could have a blood test made, if he wished. When the defendant expressed a desire for a blood test Barron took him to the Albany General Hospital where the blood sample was drawn.

It will be observed that ORS 483.630 states that "the officer * * * may, upon written consent of the arrested person, cause a chemical analysis to be made of the blood." It adds that "only a duly licensed

physician or a person acting for such physician, at the request of the officer or person making the arrest may withdraw blood."

The defendant contends that the evidence does not show that the person, R. M. Wade, M.D., who drew from him the blood sample was "a duly licensed physician."

The defendant concedes that before the blood specimen was taken from him he signed a paper of which the following is a copy:

"Consent to Blood Specimen Withdrawal

"I,    John D Brady    having on this    27    day of February    , 195 9 , at    7:55 p. m.    o'clock, been placed under arrest on a charge of driving a motor vehicle while under the influence of alcohol, and in accordance with ORS 483.630, do voluntarily agree to have a specimen of my blood withdrawn by    R M Wade    MD    , and I further acknowledge that I have been advised, before any such specimen was withdrawn, by    Stan Barron , the arresting officer, that the blood so withdrawn will be analyzed for alcoholic content and the result of such analysis will or may be used against me as evidence in any legal proceeding arising out of this arrest.

"Signature    John D Brady
"Address    Rt 1 Bx 356E Lebanon Ore

"Witnesses:
"    Stan Barron        Date    2-27-59
"    R M Wade  MD        Date    2-27-59"

The foregoing agreement was upon a printed form. The defendant's name, the date of the arrest, the names of "R. M. Wade, M.D." and of the officer were entered in appropriate blank spaces in the form by the officer. Apart from those entries the agreement was in print. It will be noticed that in the lower left-hand corner

the officer and Doctor Wade signed as witnesses to the defendant's signature. Officer Barron testified that Doctor Wade was present when the defendant signed the paper. The defendant made no effort to challenge that testimony. The officer also testified that after the paper had been prepared and signed Doctor Wade drew the blood specimen. His testimony upon that subject follows:

"Q Now, after that request was signed, was there such a blood test taken?

"A There was.

"Q And by whom was it taken?

"A By Doctor Wade, an Albany doctor.

"Q And is he a licensed physician and surgeon?

"A Yes."

After that answer had been given defendant's counsel declared:

"I object to that, your Honor. I don't think this witness would be qualified to testify to that."

The following is the ruling:

"The objection would be well taken, unless there is some further showing than what has been placed in the record to this point."

No motion was made to strike the witness's answer. Mr. Barron then testified:

"That sample of blood was put in the regular container at the hospital in front of the defendant and the doctor and myself, and was sealed up there and put in the mail to the Oregon Medical School in Portland.

"Q By whom was that done?

"A I did that myself, in front of the doctor and the defendant."

After the officer had so testified he was shown the container which carried the vial to the University of Oregon Medical School. The vial bore the defendant's name, the date and hour and also this entry: "Sample taken by R. M. Wade." When the vial was offered in evidence defendant's counsel made this objection:

"There hasn't been a proper foundation for it, your Honor. We don't have a showing that this specimen was taken by the person authorized and required by the statute to take it; and we have nothing but the officer's word as to who took it, or the fact that it was properly identified by that individual before it was mailed."

The objection was overruled.

The crime detection laboratory of the University of Oregon Medical School made the analysis and certified the result upon a form which was received in evidence. It reported the following: "GRAMS ALC/100 mo BLOOD 0.22." The chemist who made the analysis attended the trial and testified.

The foregoing shows that the defendant had voluntarily signed a paper which stated that he was under arrest upon a charge of driving a motor vehicle while under the influence of alcohol and that "in accordance with ORS 483.630" he agreed "to have a specimen of my blood withdrawn by R. M. Wade, M.D." He makes no claim that he was ignorant of the import of the initials "M.D." or of the vocation of Doctor Wade. It will be noticed that not only did the officer write the name R. M. Wade, M.D. in the part of the form prepared for the entry of the physician's name but that R. M. Wade, M.D. himself signed the paper. He did so as one of the witnesses to the defendant's signature. The officer, Stanley Barron, testified that

Doctor Wade was present when the paper was prepared and when the defendant signed it. He, of course, also testified that Doctor Wade withdrew the blood specimen.

Doctor Wade did not testify, and was not present at the trial. As we said, the defendant now contends that the record lacks evidence showing that Doctor Wade was "a duly licensed physician."

Webster's New International Dictionary, 2nd edition, page 2995, assigns to the abbreviation "M.D." the following meaning: "*   *   * Doctor of Medicine *   *   *." The Oxford Dictionary, Vol VI, page 264, gives this definition of "M.D." "Abbreviation of Latin *Medicine Doctor,* doctor of medicine   *   *   * One holding the degree of M.D., a physician."

*Townshend v. Gray,* 62 Vt 373, 19 A 635, 8 LRA 112, arose out of the efforts of the plaintiff through mandamus to compel the defendants, Censors of the Vermont State Eclectic Medical Society, to grant her a certificate authorizing her to practice medicine. In denying relief the decision said:

> "*   *   * The degree of M.D. is something more than a mere honorary title. It is a certificate attesting the fact that the person upon whom it has been conferred has successfully mastered the curriculum of study prescribed by the authorities of an institution created by law, and by law authorized to issue such certificate. It thus has a legal sanction and authority. But it has more. In practical affairs, it introduces its possessor to the confidence and patronage of the general public.   *   *   *"

In *Becker v. Humphries,* 34 Ga App 644, 130 SE 379, the question was whether the plaintiff Granville Humphries, who had presented to the defendant, J. H.

Becker, an account for $570 for services rendered, was a physician. The account was upon a printed form which entered after Humphries' name M.D. The court said:

> "* * * The copy of the account, which was expressly made a part of the petition, shows that the plaintiff was an 'M.D.,' and this court will take judicial cognizance that this abbreviation imports prima facie that the plaintiff was a physician. Towler v. Carithers, 4 Ga. App. 518, 61 S.E. 1132."

One need not turn to the dictionaries and the decisions of the courts in order to learn the signification of the symbol "M.D." Its meaning is as well known as the term "Doctor of Medicine" for which it stands. When one sees a name upon a door or window to which there is appended the initials "M.D." he understands that the name is that of a physician. Likewise, when he sees a name upon a business card or letterhead followed by "M.D." he realizes that the individual whose name is thus entered is a physician, or stated otherwise, a doctor of medicine. In other words, that abbreviation for doctor of medicine can signify the idea for which it stands as well as the entire term itself. When the defendant saw that there was entered in the paper which was submitted to him for his signature the name R. M. Wade followed by M.D. he was informed thereby that R. M. Wade was a physician as adequately as if the words "Doctor of Medicine" appeared after Doctor Wade's name.

ORS 41.360 (33) creates a disputable presumption that "the law has been obeyed." That presumption is in favor of the legality of a questioned act. It warrants a presumption, especially in the absence of all imputations to the contrary, that when Doctor Wade placed after his name the initials "M.D." he had a

lawful right to do so which he had gained through compliance with our laws which prescribe the manner in which an applicant may obtain a license to practice medicine.

■ It is true that Doctor Wade did not attend the trial, but ORS 483.630 does not require the physician who draws the blood specimen to attend the subsequent trial, if one occurs. The physician who draws the blood specimen is not the individual who makes the blood analysis. Doctor Wade did nothing more than draw from the defendant a blood specimen directly under the defendant's observation. We are aware of no statute or constitutional provision which required him to be called by the state as a witness.

We have found no merit in the defendant's assignments of error. The judgment of the circuit court is affirmed.