John Smith and another *vs.* W. B. Ellington *et al.*

No. 55.—John Smith and another, admr's, &c., plaintiffs in error *vs.* W. B. Ellington *et al.*, defendants in error.

[1.] In the payment of debts of an Intestate, debts due by him for money collected as an Attorney at Law, are to be classed with "Bonds or other obligations" and not with "Open accounts."

In Equity in Greene Superior Court. Decision by Judge R. V. Hardeman, Oct. Term, 1853.

This was a bill to marshal asset. The only question at issue was whether debts due by the intestate for money collected as an Attorney at Law upon evidences of debt, in his hands ;

whether he had given his receipt therefor or not, should be considered as of the dignity of " Bonds and other obligations" or as " Open accounts." The Court below held the liability to be an open account, and this decision is assigned as error.

CONE for plaintiff in error.

DAWSON for defendant in error.

*By the Court.*—NISBET, J., delivering the opinion.

[1.] Our judgment is, that debts due from the estate of an Attorney on account of money collected by him in that character are to be classed with " Bonds or other obligations". Whether they should be so classed, or should be classed with open accounts, I consider a question of some difficulty. The latter is the conclusion of first impression very generally, yet when tested by the application of principle, the former, *it seems to us,* is the legal truth. Although this question has *not been* before us in the form in which it is now presented, yet principles have been settled here, which go far to determine it. The act of 1792, prescribing the order in which the debts due by an intestate or testator shall be paid, after specifying certain preferred debts continues the classification thus: " Then Bonds or other obligations ; and lastly open accounts". (*Prince* 228, 229.) This act in terms makes no provision for simple contract debts in writing, and it became the duty of this Court to determine to what class belongs a promissory note not under seal. We had no power to legislate into this statute a new class of debts, and to legislate into the statute the position which it should ocupy ; so upon a *construction* of the clause " Bonds or other obligations," we placed it among *other obligations.* We did not *legislate* as we were charged to have done by counsel ; we only exercised the function and discharged the duty which belongs to all courts, to wit : that of construction when a statute is doubtful. By way of rebuke for Judicial Legislation, we were referred to the decision of the *Carolina Courts* upon the very point

arising under their statute, of which ours is a literal transscript, by which, promissory notes were wedged in between bonds or other obligations; and open accounts were created a class by themselves. Now this reference, as a rebuke to this Court for *Judicial Legislation,* was most unfortunate. The *Carolina Courts did legislate* in effect, by a resort to the C. Law, by creating a class of debts and defining its position in the distribution, wholly unknown to the statute. (1. *Bay. R.* 275.) They have done that which we 'hold the Legislature alone can do. We ventured only upon a Judicial ascertainment of the Legislative mind. Moreover, we are not to be considered as bound to follow the lead of the *Carolina Courts.* We hold them, as we hold the Courts of other States, subject to the control of what we consider our own better judgments. This I say, without a purpose to disparage the Judiciary of our sister State, the highest respect for which has been recorded by every member of this Court, and which respect, I again, in this my last opinion, have great pleasure in avowing. When this opinion shall be written, I will be wholly disconnected with the administration of the Law in Ga. except as a member of the Bar. Eight years of laborious, and I will add, conscientious service upon the *Supreme Court bench,* under circumstances of embarrassment, which I am sure can never again attend that Court, gives me the excuse, at least, for saying, that in nothing could the statesmen of *Georgia* so much display their wisdom, and so greatly promote the prosperity of our State, as in following the example of the *State of South Carolina,* in making the tenure of the office of the Judges of the Supreme Court either for life, or for a term so long as to gratify the highest judicial ambition and secure the sternest Judicial independence. Hoping the best for my native State, I will only add *non, si male nunc, et olim sic erit.*

The opinion referred to settled this point, to wit: that by *bonds or other obligations,* the Legislature did not mean instruments under seal alone, but meant to include in the words " or other obligations" other contracts in writing. (*Davis vs. Smith* 5 *Ga. Rep.* 275). It is a little remarkable that our learned

brother who argued this case for defendants in error, in the concluding part of his argument admitted this to be the meaning of those words, although he had previously said that the decision in *Davis vs. Smith* made the Legislature stultify themselves. So that notwithstanding the ungracious criticism of our learned brother in one breath, we have the authority of his judgment in another. It is true that this is not a debt evidenced in writing, and therefore the case of *Davis vs. Smith* does not cover it altogether. Yet that case overrules one of the objections to the judgment in this case, to wit: that instruments under seal alone, are comprehended in the clause of the statute under consideration.

I now proceed to say that a debt standing in account, as this debt stands, was not intended to be classed with the *open accounts* of the statute. If not classed with them, and as it must have place somewhere in the statute, the conclusion at which we arrive is, that it belongs, with simple contract debts, in writing, to the class of *bonds or other obligations*. I apprehend that it is a common error to suppose that all debts not reduced to writing are open accounts. By *open* accounts in strict legal phraseology is meant, debts not reduced to writing, and which are subject to future adjustment and may be reduced or modified by proof. (1 *Kelly* 288.) Such as accounts running between merchants—a merchant's accounts for the sale of goods, and all others of like character. These are the accounts which we suppose the Legislature intended should be last paid, and which they designate as *open* accounts. Between these and other accounts there is a radical legal difference. Such other accounts as that we are now considering, to wit: an account for so much money collected as the money of another. These latter are not open—they are not subject to future adjustment —to reduction or modification. When proven, they are fixed legal obligations—as much so as a simple contract in writing. I know of no way by which open and other accounts may be discriminated more safely than by the application to them of those rules of law by which it is determined whether they bear interest. A liquidated demand bears interest, and if a demand

in account be liquidated, it is no longer open. By this test, this is not an open account, for by the decisions of this Court, an account against an attorney for money collected, is liquidated and bears interest. (1 *Kelly*, 275.  2 *Ga. Rep.* 310.)

Is it unreasonable to suppose that the Legislature had in view the distinction I now draw between open and liquidated accounts? If they intended to embrace all debts in account in the last class, why did they say *open* accounts? Why did they not say *accounts?*

Nor is it unreasonable to suppose that all debts in account not open, were intended to be embraced in the word obligations. It is conceded that the technical meaning of this word is an undertaking under seal. But the Legislature did not use it in that sense, because they had already, in the use of the word *bonds*, included instruments under seal. Nor is the technical meaning of obligation its only meaning. It means a tie by which one is bound, under the laws of the land, to do a given act—as to pay money. In this sense it is distinguishable from what it is in the sense of the *evidence* of a contract. An instrument under seal is an obligation, because it is under seal, and this account is also an obligation, because, by the laws of the State, when the money is proven to have been collected, the estate is bound to pay whatever sum was collected. The Legislature, by obligations, meant something different from bonds—either this is true, or they did stultify themselves. A bond is an instrument under seal. Suppose they had said instruments under seal, or other instruments under seal. If they had, stultification would be patent on the statute. But the Legislators of that day were not "men by the catalogue", but wise men and true. When using the word obligations in connection with bonds, they expressed a class of debts different from bonds, or its synonym, sealed instruments. They intended to name a class of debts, of which this is one, which are not open accounts, and which are not evidenced by a writing under seal. This meaning of obligation is not foreign to the common sense and lingual usage of our people, and it has a warrant in sound legal distinctions. We are confirmed in the propriety of this

decision by its manifest equity. I cannot see the necessity of the act of 1792. I do not perceive any thing in principle or expediency, which justifies, in the distribution of an estate, a priority in debts due to citizens. Liens are to be sustained; and to secure attention in sickness and a decent Christian burial, what are called funeral expenses, ought to be preferred.— All other just debts, whether bonds, notes or accounts, ought, it seems to me, to share equally. A debt due on account of money collected, certainly ought not to be postponed. If preferences are given, it ought to be preferred, because it has its origin in the fiduciary relation of client and attorney.

Let the judgment be reversed. .