*Slaton & Hopkins,* contra.

---

### 16269. BECKER *v.* HUMPHRIES.

1. In an action by a physician to recover for professional services rendered, it is sufficient to allege that he is a physician and was employed as such, that he rendered the services alleged, and that the reasonable value of the same was the amount sued for. It is not necessary that he should further allege that he is licensed.

2. A suit upon an open account may be sustained though the evidence shows an express agreement, where it is further proved that the plaintiff has fully performed his part of the agreement and nothing remains to be done except for the other party to make payment. Although the physician in this case was suing for the value of medical services rendered to a third person, it was not necessary, the action being on account, to allege an express agreement to pay, irrespective of whether such agreement should be proved, to entitle him to recover.

3. Where a person requests a physician to perform services for a third per-

son, for whom the person making the request is under no obligation to procure and pay for medical aid, the law does not raise an implied promise to pay merely because of the request and of the furnishing of the services in compliance therewith. In such a case the physician can not recover against the person calling him unless it appears that the services were rendered under an express contract that the person making the request is to pay therefor, or unless the proved surrounding circumstances plainly indicate that it was the intention of both parties, at the time, that the services were to be furnished on the credit of the person requesting them. While in this case there was no evidence of such express promise, there was circumstantial evidence to authorize the inference of an intention by both parties that the defendant should be liable. There is no merit in any of the special grounds of the defendant's motion for a new trial. The court did not err in overruling the motion.

DECIDED NOVEMBER 19, 1925.

Complaint; from Camden superior court—Judge Highsmith. December 30, 1924.

*L. J. Cowart, James T. Vocelle,* for plaintiff in error.

*S. C. Townsend,* contra.

BELL, J. D. G. Humphries brought a suit against J. H. Becker, alleging that the defendant was indebted to him in the sum of $570 on an account, a copy of which was attached to and made a part of the petition, and was as follows:

"Fernandina, Fla., August 12, 1920.

"Mr. J. H. Becker to D. Granville Humphries, M. D., Dr.

"Statements monthly.

"Visits to J. D. Skinner on order, 1918, Dec. 2, 3, 4, 5,

      6, 7, 8, 9, 10, 11, 12, 13, 14, each $35.00 .......... 420.00

"Two visits to J. D. Skinner on order, 1918, Dec. 15.. 50.00

"Dr. Freeman: To consultation to order of J. H. Becker 100.00

"570.00"

Defendant filed a general demurrer, which the court overruled. The trial resulted in a verdict in the plaintiff's favor for $310. The defendant excepts to the overruling of his demurrer and to the refusal of his motion for a new trial.

1. Counsel for plaintiff in error contend that the petition failed to set forth a cause of action, because there is no allegation that the plaintiff had been licensed to practice medicine in the State of *Georgia.* We think that the allegation was unnecessary. In the first place it appears that the physician was located in the State

of Florida, and the petition does not show on its face that he practiced in Georgia. The account is for medical services rendered to one J. D. Skinner, without disclosing where they were rendered. So far as appears from the petition, the patient may have been in Florida or elsewhere. But regardless of this, it seems to be the rule that in an action by a physician for the value of professional services rendered by him, it is sufficient to allege that he is a physician, that he was employed as such, that he rendered the services alleged, and that the reasonable value thereof was the amount sued for. *Fincher* v. *Davis,* 27 *Ga. App.* 494 (2) (108 S. E. 905). By the weight of authority it was not necessary that the petition should go further and show that he had a license to practice according to the legal requirements of the State in which the services were performed. Of course, if it appears that the physician was practicing without a license, in violation of statute, he can not recover. *Murray* v. *Williams,* 121 *Ga.* 63 (48 S. E. 686). But this would ordinarily be a matter of defense. In *Durland* v. *Grimes,* 18 *Ga.* 693 (1), one of the grounds of error was that in the declaration it was not averred that the plaintiff was a licensed physician, and, as such, entitled to sue for and recover for his medical services. The Supreme Court said, "By reference to the form in *Chitty* it will not be necessary to make this allegation." See also, in this connection, *Avera* v. *Tool,* 74 *Ga.* 398 (2) ; *Griner* v. *Baggs,* 4 *Ga. App.* 232 (1) (61 S. E. 147) ; *Bartow Guano Co.* v. *Adair,* 29 *Ga. App.* 644 (3) (116 S. E. 342) ; Leggat *v.* Gerrick, 35 Mont. 91 (2) (8 L. R. A. (N. S.) 1238; 88 Pac. 788) ; 22 Am. & Eng. Encyc. Law (2d ed.), 798; 30 Cyc. 1601. What is said upon this question in *Grantham* v. *Fleming,* 13 *Ga. App.* 184 (2) (78 S. E. 1113), is obiter. The copy of the account, which was expressly made a part of the petition, shows that the plaintiff was an "M. D.," and this court will take judicial cognizance that this abbreviation imports prima facie that the plaintiff was a physician. *Towler* v. *Carithers,* 4 *Ga. App.* 518 (61 S. E. 1132).

2. A further contention (the only other one made under the demurrer) is that it appears from the petition that the plaintiff is claiming a liability against the defendant for professional services rendered to a third person, for which it is insisted the plaintiff can not recover without showing an express agreement by the

defendant to pay for the same. Even if so, the petition was suffi-
cient to withstand the attack of a mere general demurrer based
upon this ground. It alleges that the defendant was indebted on
the account, and that the services were rendered "on order," the
reasonable inference being that the order was that of the defendant.
Furthermore, a suit upon an open account may be sustained though
the evidence shows an express agreement, where it is proved that
the plaintiff has fully performed his part of the agreement and
nothing remains to be done except for the other party to make pay-
ment. In the nature of the action it was not necessary for the
plaintiff to allege an express agreement by the defendant to pay,
irrespective of whether such agreement should be proved to entitle
him to recover. *Chatham Abattoir & Packing Co.* v. *Painter En-
gineering Co.,* 28 *Ga. App.* 383 (1) (111 S. E. 82); 1 Corpus
Juris, 649, 650; *Southern Ry. Co.* v. *Grant,* 136 *Ga.* 303 (71 S. E.
422, Ann. Cas. 1912C, 472). As against the contentions which
the plaintiff in error has made, we hold that the court did not err
in overruling the general demurrer.

3. We come next to the consideration of the exceptions to the
overruling of the motion for a new trial. The evidence being
otherwise sufficient to authorize the verdict, we address ourselves
to the one question as to whether or not the proof was sufficient
to show the defendant's liability for medical services rendered to
a third person. The plaintiff testified as follows: "I know Mr.
Becker. I reside in Fernandina, Nassau county, Florida. The
attached statement of that account, to wit: Visits to J. D. Skinner
on order, 1918, Dec. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, each
$35.99, $480; two visits to J. D. Skinner on order, 1918, Dec. 15,
$50; Dr. Freeman, to consultation to order of J. H. Becker, $100,
is correct and true, as to each recital, and no part of the same has
ever been paid. The account is correct and is still unpaid, and
I rendered the professional service set forth in the bill, at the in-
stance or request of Mr. J. H. Becker, of St. Marys, Georgia. I
am a physician practicing at Fernandina, Fla. I performed the
services set forth in the bill at the instance of Mr. J. H. Becker,
and while Mr. Skinner was sick Mr. Becker asked me if it was
necessary to procure the services of a trained nurse, and I told
him one was necessary, and Mr. Becker paid her. I engaged Dr.
Freeman, of Jacksonville, Florida, at the instance of Mr. Becker,

for the purpose of a consultation, and Dr. Freeman looks to me for the amount of his services. At the time Mr. Becker asked me if I needed another doctor I informed him that I did, for the purpose of consultation, and asked him if he cared to get one from Savannah or elsewhere, and he asked me to get a Jacksonville doctor, and that he knew of none, so I suggested Dr. Freeman, because he would suit me better; so Mr. Becker told me to go ahead and get Dr. Freeman, which I did. The bill of Dr. Freeman was made out to me by Dr. Freeman, and it is up to me to pay the same, which is $100. When Mr. Becker asked me to get Dr. Freeman he gave me no written order; but at the time I was talking with Mr. Becker about getting Dr. Freeman, Mr. Becker and I were at the home of Mr. Skinner, and his request was verbal and not by written order. The different times I was summoned to the bedside of Mr. Skinner, sometimes he would send word. The first time I was called to Mr. Skinner I was in St. Marys, and Mr. Becker came to me and told me he wanted me to go out where Mr. Skinner was living, and Mr. Becker told me that Dr. Thigpen had been treating Mr. Skinner, but had to go away, and Mr. Becker told me to look him (Skinner) over, and to do what was necessary for him, and said, 'Do what you can for him.' On the other occasions, or some of them, Captain Rudulph would bring the messages to me, to go over and see Mr. Skinner, and many times, when I would get to St. Marys, Mr. Becker would get in the car and go out with me to Mr. Skinner's; and after I had made a few calls Mr. Becker realized that Mr. Skinner was in a bad condition, and told me to come as often as necessary and do everything possible, and I did make several trips without any order at all, after Mr. Becker had requested me to. . . I went at the request of Mr. Becker, and also procured the services of Dr. Freeman at the request of Mr. Becker and feel that Mr. Becker owes for the amount of my services. As a matter of fact, I would not have gone without Mr. Becker asking me, and he was the man in authority, and Mr. Skinner was living on the place of Mr. Becker, from what I understood, and naturally I held Becker for it."

Captain F. T. Rudulph, for the plaintiff, testified as follows: "Mr. Becker came to me to get me to go for Dr. Humphries several times, dozen or more. He first came and asked me to go

and get Dr. Humphries as quick as I could. I told him Mr. Becker sent for him to go out to see Mr. Skinner. I delivered the message to Dr. Humphries every time. He would tell me to tell Dr. Humphries to come, and then at other times I would get a telephone message when he was in Scottsville. Sometimes I would get a message from Scottsville, then sometimes Mr. Becker would tell me. The different times I went for Dr. Humphries I would go down and tell him, 'Doctor, I have come for you, Mr. Skinner is worse,' or, 'they want you to come and see him.' I say the first time I went Mr. Becker asked me to go personally. He told me personally two or three times after that." It appears that Skinner was living upon the defendant's farm, but was not an employee. W. A. Williams, for the plaintiff, testified: "At the time Mr. Skinner was living there Mr. Becker told me at any time Mr. Skinner wanted anything to go and get it, and on one occasion I come and got Dr. Humphries. He said, if they needed a doctor, to come and get him, and I did come and got Dr. Humphries." The evidence introduced by the defendant was in conflict in some respects with that introduced by the plaintiff, but the defendant testified in part as follows: "So far as I know, Mr. Skinner was an entire stranger to Dr. Humphries. Dr. Humphries did not know anything about Skinner, so far as [I am] advised. His first visit to Skinner was at my request. I went out with him. After I did that, I made arrangements with Captain Rudulph several times to go after him. I made arrangements with whoever was in charge to take him out on the motor-car. I oftentimes met Dr. Humphries at the dock and went out with him. The fact is I went out with him practically every time. I used to go out there two or three times a day."

Since, in determining whether the verdict was supported, this court is bound to give effect to that version of the evidence most favorable to the plaintiff which the jury was authorized to adopt, it is unnecessary to set forth in detail the other evidence introduced by the defendant. It will be observed that there was no relation between the defendant and the patient such as would raise a legal obligation on the defendant's part to procure and pay for the services of the physician for him. The preponderance of authority is to the effect that a mere request by one person to a physician to render services to another, to whom the person mak-

ing the request is under no obligation to supply the same, will not raise an implied promise in favor of the physician to pay for the services when rendered. A humane policy encourages the summoning by others of medical aid for those who may be stricken and unable to act for themselves. It would be quite easy in such a case for the physician to inquire if the person making the request intends to become personally bound; and when he fails to do so, he has no one to blame except himself for having acted upon a mere request without an assurance that the party making it intends to incur a personal liability. The physician should remember that persons commonly call for medical aid for the sick solely out of a spirit of kindness, irrespective of relationship, and without any expectation of becoming personally responsible. But this is not a case of a *mere request* for the rendition of services and a compliance therewith by the physician, and the case is different from *Norton* v. *Rourke,* 130 *Ga.* 600 (61 S. E. 478, 124 Am. St. Rep. 187, 18 L. R. A. (N. S.) 173), since in that case the physician was called to one who had become suddenly ill because of an injury, and there was not, as here, a continuation of the services upon further and repeated requests, and, in most instances, with the defendant present assuming charge of what was done. Another physician had been in charge of the case, but had to go away, and thereupon the defendant brought in the plaintiff. Subsequently, when the patient was seen to be in a bad condition, the defendant told the plaintiff to get a nurse, which was done, and he paid for her services. It is true that the Supreme Court, in its opinion in *Norton* v. *Rourke,* supra, cites with approval the case of Boyd *v.* Sappington, 4 Watts (Penn.), 247, where it is held that a request by a father to a physician to attend his son, then of full age, and sick at his father's house, raised no implied promise on the part of the father to pay for the services rendered, and also referred to other cases to the same general effect. Mr. Chief Justice Fish, in the course of his opinion, however, said that the doctrine was well stated in 22 Am. & Eng. Encyc. of Law (2d ed.), 790; and, turning to this reference, we find the following statement: "When a person requests a physician to perform services for a patient, the law does not raise an implied promise to pay the reasonable value of the services so rendered, unless the relation of the person making the request to the patient is such as

raises the legal obligation on his part to call in a physician and pay for his services. Whether or not the implied liability is created must depend largely on the circumstances of the particular case." See also, in this connection, *Raoul* v. *Newman*, 59 *Ga.* 409; 21 R. C. L. 412; 30 Cyc. 1597; Spelman *v.* Gold Coin Mining & Milling Co., 26 Mont. 76 (66 Pac. 597, 55 L. R. A. 640, 91 Am. St. Rep. 402); McClenahan *v.* Keys, 188 Cal. 574 (206 Pac. 454); McGuire *v.* Hughes, 208 N. Y. 516 (46 L. R. A. (N. S.), 577, Ann. Cas. 1914 C, 585).

The true rule in a case of this sort seems to be that the plaintiff could not recover without showing affirmatively either that the services were rendered under an express promise on the part of the defendant to pay therefor, or that the surrounding circumstances were such as plainly to indicate that it was the intention of both parties that the defendant would be liable. Compare *O'Kelley* v. *Faulkner*, 92 *Ga.* 521 (1) (17 S. E. 847); *Phinazee* v. *Bunn*, 123 *Ga.* 230 (1) (51 S. E. 300). While the evidence failed to show an express promise, the other circumstances as disclosed by the evidence were sufficient to authorize an inference of an intention by the parties, at the time, that the services were to be furnished on the defendant's credit; and we can not hold that a finding for the plaintiff was unwarranted. The defendant has not sought to exclude the item represented by the charge of the consulting physician, but has dealt with the case as if this item should stand or fall with the others set forth in the account. Therefore, in ruling that the verdict was authorized, we have merely decided the question raised by the plaintiff in error as to whether under the evidence the plaintiff was entitled to recover at all, any other ground of attack, going merely to some part of the verdict, being waived by the failure of the plaintiff in error to urge it. We have examined the special grounds of the motion for a new trial, and are of the opinion that each of them is without merit. The court did not err in overruling the motion.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*