41740. WAINWRIGHT v. CONGER, Executrix.

SUBMITTED JANUARY 6, 1966—DECIDED JANUARY 21, 1966.

*Garland T. Byrd, Dan S. Beeland,* for appellant.

*H. Thad Crawley,* for appellee.

DEEN, Judge. ■ The appellant contends that the verdict in the sum of $3,098.40 in favor of the plaintiff is without evidence to support it. The plaintiff's account, for the years 1959 through 1963, showed purchases during each year of varying quantities of named varieties of peach seedlings, running from three to eight varieties during each year, and varying in price per unit between 14¢ and 29¢, together with credits against each year's purchase, adding up to a total balance contended to be owing of $5,219.77. Granting that the plaintiff failed to prove delivery except through the testimony of the defendant himself, a witness for the defendant testified to delivery of all trees except 3,350 Dixie Land and 375 Red Skin in 1963 and 2,685 Cardinals in 1962, amounting to the sum of $1,218.65. He also produced testimony that out of those purchased in 1959 there were 491 defective trees; 1459 from those purchased in 1960; 1441 in 1961 and 1006 in 1962. Prices of individual lots ranged between 14¢ and 29¢ per tree. The jury apparently could have given the defendant credit for 6,410 undelivered trees at the prices shown by the plaintiff and for 4397 defective trees at an average price of 20½¢ per tree, arriving at figures of $1,218.65 and $901.38, which deducted from the alleged indebtedness of $5,219.77 would leave $3,099.74, the verdict actually being for $3,098.40. To arrive at this figure the jury necessarily found against the defendant's cross bill for damages and thus found against the defendant's allegations of fraud. Ordinarily in such a case the measure of damages would be the

purchase money with interest and expenses incurred by the purchaser in complying with the contract after the same had been entered into, such as the planting and replacing of the defective trees and the value of the care and fertilizer expended on them. *Butler v. Moore,* 68 Ga. 780. There was, however, some evidence that the defendant had signed a contract reciting in part: "It is agreed by both parties that Conger's Nurseries is responsible only for the original price of the trees." In addition each invoice carried the statement: "We exercise the greatest care to keep our varieties true to name and hold ourselves in readiness at all times to replace, on proper proof, all stock that may prove otherwise or refund the amount paid, but it is mutually agreed between the purchaser and ourselves that we shall not be liable for any amount greater than the original price." A witness for the defendant testified that "it was customary to replace a defective tree; we got trees to replant with," from all of which evidence the jury was authorized to find a course of dealing under which the damages would be limited to the purchase price of the defective stock.

■ The erroneous exclusion of evidence is not cause for a new trial where similar testimony by the same witness is later admitted without objection. *Daughtry v. Savannah &c. R. Co.,* 1 Ga. App. 393 (3) (58 SE 230). The defendant's son testified that a package of 500 seedlings arrived unlabeled and was planted on a separate field; as to these "Mr. Conger, himself said that those trees might be mixed." This latter statement was excluded on objection that it was hearsay. Later, however, the same witness testified, as to the same unlabeled package: "He told us to go on and set them out and then he would see what they were—and then he would help us with them—because the only thing he could do with them were to destroy the trees." We do not decide, because the question was not specifically urged, whether the testimony would have been objectionable in any event under *Code* § 38-1603 (5) which provides that, in any case where a party litigant may not testify against the personal representative of a deceased person as to transactions or communications with the deceased, his agent is likewise precluded from doing so. The defendant and his son

were present during the conversation with the plaintiff executrix' deceased husband; the son, who was the witness, testified that he lived with his father, was an employee, had been associated with him in the peach farming business most of his life, and testified to other facts showing that he was acting throughout the transactions with Conger's Nursery in a managerial capacity. If under these facts he was acting as agent for his father, as the circumstances indicate, then the testimony was properly excluded; if not, it was at most harmless error.

*Judgment affirmed. Nichols, P. J., and Hall, J., concur.*