## 52044. KITCHENS v. LOWE.

QUILLIAN, Judge.

Appellant filed a petition in attachment alleging that appellee was indebted to the appellant on an open account in the amount of $15,992.61; that appellee owned certain property of the value of $100,500 liable for the payment of his debts; that appellee was preparing to sell the property to avoid payment of the indebtedness. The appellee answered, denying the material averments of the petition and alleging that appellee had a meritorious defense in that employees of appellant improperly mixed certain chemicals among the agriculture chemicals and fertilizer which formed the basis for the claimed indebtedness. The improper mixing of the chemicals caused the appellee's crop of young corn, to which the same was applied, to be stunted and rendered the crop valueless.

Appellant then filed a declaration in attachment in Butts Superior Court seeking to recover $15,992.61 for fertilizer and chemicals sold to the appellee on open account. The appellee filed an answer to the declaration in attachment denying the indebtedness, and further setting forth that the attachment should not have issued and that he had a meritorious defense. He also filed a motion to dismiss the attachment on the ground that at the time of the filing of the suit another action between the same parties and for the same cause was pending in Burke Superior Court.

The case came on for trial before a jury, and on the same day, the appellee filed an amendment to his answer in which he set forth a counterclaim against the appellant in the amount of $24,000, alleging that the appellant had improperly mixed certain nitrogen fertilizer and Atrazine weed killer, which was placed upon the crop of appellee, causing it to be stunted and valueless and thus damaging appellee in the amount set forth, for which he sought judgment against the appellant.

The appellant filed a motion to strike the counterclaim on the ground (1) the counterclaim was a compulsory one within the meaning of CPA § 13 (a) (Code Ann. § 81A-113 (a); Ga. L. 1966, pp. 609, 625) and was not

an omitted counterclaim under CPA § 13 (f), and (2) that the counterclaim sought to recover "for the value of a crop or lost profits which is too remote and speculative to form the basis of damages." The motion was overruled and the case proceeded to trial.

At the conclusion of the evidence, the appellant made a motion for directed verdict on the ground that the appellee's counterclaim was compulsory and should have been filed with the original answer, and on the ground that the appellee sought to recover the value of a crop and lost profits, and further, had failed to prove any improper mixing of fertilizer and Atrazine. The court overruled the appellant's motion and the jury returned a verdict in favor of the appellee in the "sum of no dollars."

The appellant then filed a motion for judgment notwithstanding the verdict, predicated on the grounds he had urged on motion for directed verdict. This motion came on for hearing and was overruled by the trial judge. From this final judgment, appellant filed the present notice of appeal. *Held:*

1. The appellant urges that the counterclaim in question was compulsory and hence must meet the requirements of CPA § 13 (f). The appellee contends that the counterclaim was permissive and need not be tested by those requirements. First of all, the question of whether the counterclaim was compulsory or permissive is not *crucial* in this case. CPA § 13 (f) applies with regard to omitted counterclaims, *both* to *compulsory* and *permissive* ones. However, the question of the type of counterclaim here involved was a factor to be considered by the trial judge in making a determination under CPA § 13 (f).

The failure to plead a compulsory counterclaim can result in the party losing the right to assert that claim in a subsequent action. On the other hand, the failure to assert a permissive counterclaim at the proper time will only result in the party being unable to make the contentions in the suit in question, not that he will be barred in a future suit. As set forth in 3 Moore's Federal Practice § 13.33, page 13-846: "Subdivision [13] (f) will find its most useful application in the case of compulsory counterclaims. Inasmuch as a party could later be met

successfully with a plea of res judicata in a suit on a claim within subdivision (a) which he had failed to plead, the courts should be very liberal in allowing amendments to include compulsory counterclaims, and even permissive counterclaims where no prejudice would result. . ."

In the instant case, there was a motion to dismiss on the basis that there was a suit for the same cause and between the same parties pending at the time the declaration for attachment was filed. The trial judge also made mention of such pending suit at the beginning of the trial when the motion to dismiss the counterclaim was passed upon. CPA § 13 (a) provides an exception with regard to a compulsory counterclaim, if, at the time the action was commenced, the claim was the subject of another pending action. Hence, without making a definitive ruling, from the present record, it appears that the counterclaim in question was not a compulsory one.

In *Blount v. Kicklighter,* 125 Ga. App. 159, 160 (186 SE2d 543), this court made a thorough study of the problems involved relative to a counterclaim which is filed late, an "omitted counterclaim." This court pointed out that the trial judge should hold a hearing, considering the requisites as set forth in CPA § 13 (f), as to whether the late counterclaim should be allowed. The decision was an excellent one and will be followed here. Nevertheless, it should be pointed out that the language used in some parts seems to overemphasize the first three factors contained in CPA § 13 (f), to the exclusion of the fourth, which is "if justice requires it." In a recent decision involving default judgments, our Supreme Court has held that the language in CPA § 55 (Code Ann. § 81A-155; Ga. L. 1966, pp. 609, 659; 1967, pp. 226, 238) "where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened" is co-extensive with the other requirements contained in that section. *Houston v. Lowes of Savannah, Inc.,* 235 Ga. 201 (219 SE2d 115). Accord, *Axelroad v. Preston,* 232 Ga. 836 (209 SE2d 178). The federal courts, in construing the identical federal rule, have held that the clause "when justice so requires" is an independent ground for allowing a counterclaim. Smith Contracting Corp. v. Trojan Construction Co., 192 F2d 234; Singer Mfg. Co. v.

Shepard, 13 FRD 509 (18 FR Serv2d 13f. 12). Applying the logic of the Supreme Court decision and the federal decisions to the statute in question, we therefore hold that the trial judge should allow the amendment "when justice requires," even though the other three requirements may not be met.

There are several factors which support the trial judge's allowance of the counterclaim. First, it arose out of the same transaction and would ordinarily be considered compulsory. In this regard, the issues of the petition and counterclaim were so interrelated as to be properly considered together. Second, the appellee had previously stated as a defense the contention that some of the material sold him had stunted and damaged his corn crop. So, the appellant was not surprised or prejudiced by the late counterclaim. Third, the appellant was offered and declined a continuance. Hence, we find no harmful error in the allowance of the counterclaim.

2. The appellant moved to dismiss the counterclaim on the further ground that it set forth an incorrect measure of damages. This was not a valid basis for dismissing the counterclaim at the pleading stage. *Goette v. Darvoe,* 119 Ga. App. 320, 322 (166 SE2d 912), and *Empire Bkg. Co. v. Martin,* 133 Ga. App. 115, 120 (210 SE2d 237).

3. We now turn to the sufficiency of the evidence adduced.

"In an action by a purchaser of seed against his vendor on the latter's warranty of their quality, no fraud being alleged, the measure of damages would be the purchase money with interest and expenses incurred by the purchaser in complying with the contract after the same had been entered into, such as the hauling of the seed, preparing the purchaser's land for planting, sowing and rolling the seed, and such other necessary expense as was incurred after the making of the contract. (a) Loss of prospective profits on the land planted with the seed does not form a part of such damages." *Butler v. Moore,* 68 Ga. 780 (45 AR 508).

These principles are applicable where there is deficient fertilizer or a deleterious substance in the fertilizer. *Codman v. Roberds,* 27 Ga. App. 559 (9) (109 SE

536) (where defendant pleaded by way of recoupment that poisonous borax was in potash sold him). "The defendant, in a suit for the purchase-price of worthless fertilizer, may, in addition to defeating recovery of the purchase-price, recover of the seller damages actually and directly sustained as a result of the use of such fertilizer, and capable of exact computation, such as expenses of cartage or haulage, storage, and distribution, including preparation for distribution." *Griffin v. Taylor,* 65 Ga. App. 346, 351 (16 SE2d 186). Profits recoverable are limited to probable, as distinguished from possible, benefits. "Profits which are remote, or speculative, contingent or uncertain are not recoverable." *Ga. Grain Growers Assn. v. Craven,* 95 Ga. App. 741, 747 (98 SE2d 633). See *Wainwright v. Conger,* 113 Ga. App. 27, 29 (147 SE2d 28); *Radlo of Ga., Inc. v. Little,* 129 Ga. App. 530, 534 (199 SE 2d 835).

In this case, the testimony of the plaintiff showed that corn for the year in question earned approximately $3 per bushel; that on other comparable acreage, he made approximately a hundred bushels per acre and this would mean that he would expect to make $300 per acre for approximately 80 acres. The evidence also showed that preparation and planting of the land would amount to $15 or $20 per acre, and that the seeds cost the plaintiff "probably $30.00 or $35.00 a bushel." A bushel of seed would plant about 5 acres, and hence, to compute the total cost of seed would be 16 times approximately $35.

In certain cases involving a direct contract between the seller of the seeds or fertilizer and the purchaser thereof, such as a sharecropper arrangement, or a renter of the land, the courts have allowed recovery for lost profits where the evidence was clear and reasonably certain. *Perdue v. Cason,* 22 Ga. App. 284 (3) (96 SE 16); *Reynolds v. Speer,* 38 Ga. App. 570 (4) (144 SE 358); *Wideman v. Selph,* 71 Ga. App. 343 (1, 2) (30 SE2d 797). However, in most situations where there was only a contract for the sale of the items in question, losses from poor fertilizer or seeds, such as lost profits, have been found to be too speculative for recovery. See *Ga. Grain Growers Assn. v. Craven,* 95 Ga. App. 741, supra; *Radlo of Ga., Inc. v. Little,* 129 Ga. App. 530, supra.

As held in the recent case of *Miller v. Tuten,* 137 Ga. App. 188, 191 (223 SE2d 237), one cannot recover the full amount for the sale of crops, for the cost of production of the crops must be deducted from that amount. As stated therein: "It is common knowledge that crop production requires certain expenditures. . . Indeed, it is not uncommon for some farmers to operate at net losses for certain years." In *Ayers v. John B. Daniel Co.,* 35 Ga. App. 511 (133 SE 878), where this court allowed recovery for lost profits arising out of a fruit crop, the factual situation was such that the party established in great detail a sufficient basis for the reasonable ascertainment of the amount of damage. There was proof of actual yield, what would have been the probable yield, and what was the value of the fruit at maturity. In summary, to recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery.

In the case sub judice the defendant failed to show damages equivalent to the sum sought against him. The amount of $300 per acre was the gross amount and the defendant did not show all his expenses which would be incurred in making $300 per acre so that even if we allowed him to recover the lost profits that figure would not be sufficiently established.

On the other hand, the plaintiff's motion for a directed verdict was for an amount of $13,251.61, less those items containing Atrazine, some $1,473.84, for a total of $11,777.77. The defendant did show losses which would fall within the rules set out in *Butler v. Moore,* 68 Ga. 780, supra; that is, the cost of the seeds which were lost and an estimated amount with regard to cultivating the land. Hence, the plaintiff would not be entitled to a directed verdict and a judgment notwithstanding the verdict for the full amount which he sought since he did not include any deduction for the damages which the defendant proved.

Upon careful consideration, this is a clear case for application of the rule set forth in CPA § 50 (e) (Code Ann. § 81A-150; Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248) and in order to meet the ends of justice we order

that a new trial be granted.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Webb, J., concur.*

ARGUED APRIL 13, 1976 — DECIDED SEPTEMBER 10, 1976.

*Garland & Garland, Ben B. Garland, George W. Fryhofer,* for appellant.

*Harris, Chance & McCracken, Albert M. Pickett, Richard W. Watkins, Jr., William B. Jones,* for appellee.