59400. GAGE et al. v. TIFFIN MOTOR HOMES, INC.

QUILLIAN, Presiding Judge.

This is an appeal from a jury verdict for plaintiff, Tiffin Motor Homes, Inc. (Tiffin), in an action on an open account. Defendant Gage was a seller of motor homes. He entered into an agreement with Tiffin, a manufacturer of motor homes, to distribute its motor homes in the Tifton, Georgia area with financing by Finance America. These agreements are commonly called "floor planning."

Gage submitted an application to Finance America through Tiffin. Finance America required Tiffin to reimburse it if Gage defaulted on any payments. In the instant "floor plan" arrangement Gage would place an order with Tiffin. Tiffin would make out an invoice on the motor home and send the original copy of the invoice and the manufacturer's statement of origin (MSO) to Finance America. The second copy of the invoice would accompany the motor home when it was delivered to Gage. Tiffin received the full amount of its sale price to Gage from Finance America immediately upon receipt of the invoice and MSO. While the motor home was located on Gage's premises he would make small monthly payments to Finance America representing a percentage of the total amount financed. When Gage sold a motor home he would make final payment to Finance America, who would then transmit the MSO to Gage. Gage would turn over the MSO to the purchaser who would use it to apply for a certificate

of title from the state. As a Georgia certificate of title to the motor home could not be issued without a manufacturer's certificate of origin (MSO in the instant case) (See Rules of the Department of Revenue 560-10-12), Finance America used the MSO as a security device to assure full payment of its loan to the dealer.

In the instant case, Gage floor planned the purchase of a motor home from Tiffin for $15,267.40, with financing by Finance America. Gage then sold the motor home to Mr. Dorminey in December, 1977, accepting a $100 deposit and a "trade-in" vehicle. On January 10, 1978, Mr. Dorminey made a final payment of $16,500 to Gage. However, Gage testified that he never received the title to the "trade-in" vehicle and recounted various reasons given him by Dorminey for failing to turn over the title to the vehicle accepted as a "trade-in." Although Gage received $16,600 he did not make any payments to Finance America. In turn, Finance America refused to turn over the MSO until paid in full. Finally, Finance America "debited" Tiffin's account with them by deducting $15,925.03 from the total amount due Tiffin by Finance America. Tiffin brought this action against Gage. Gage appeals from a verdict for the plaintiff. *Held:*

1. The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict or in the alternative, a new trial. The evidence was sufficient to support an open account indebtedness of defendant to plaintiff.

Defendant argues he "was under no obligation whatsoever to pay appellee [Tiffin] for the motor home in question. Rather, his normal course of business was to pay Finance America for the motor homes . . . Appellee [Tiffin] merely delivered the motor home to appellant [Gage] rather than delivering to the floor plan financer [Finance America]. It is obvious and well known that the retail dealer [Gage] houses the items purchased by the financer [Finance America] . . . and, further, that legal title and ownership is vested in the financer [Finance America] . . . This being the case, the cause of action for non-performance or nonpayment would be that of Finance America . . ."

We do not find such legal theory to be so "obvious and

well known" and counsel has not cited any legal authorities to support his contention. What the evidence shows is that Gage ordered one or more motor homes from Tiffin on a continuing basis. Tiffin delivered the motor homes to Gage. Tiffin sold the motor home in the instant case to Dorminey. Dorminey paid Gage $16,600 and delivered to him a "trade-in" vehicle. Gage never paid Tiffin or Finance America. The floor plan was between Gage and Finance America, even though Tiffin was required to guarantee payments by the dealer. Although Tiffin received payment initially from Finance America for this motor home, his account was later debited to deduct that amount.

Black defines an open account as one "which has not been finally settled or closed, but is still running or open to future adjustment or liquidation." Black's Law Dictionary. Georgia law agrees with this definition. See *Smith v. Ellington,* 14 Ga. 379, 382. The U. S. Supreme Court concurs. See Smith v. Davis, 323 U. S. 111 (65 SC 157, 89 LE 107). The evidence adduced clearly established an "open account" between the plaintiff and defendant. *Becker v. Humphries,* 34 Ga. App. 644 (2) (130 SE 379); 1 AmJur2d 373, Accounts and Accounting, § 4. "Of course, a suit on an open account may be maintained for the price of goods sold under a contract where the price has been agreed upon by the seller and purchaser and where the seller has performed his part of the agreement and nothing remains to be done except for the purchaser to make payment." *Wolfe v. Brown-Wright Hotel Supply Corp.,* 87 Ga. App. 12, 14 (73 SE2d 82).

We are not persuaded by defendant's argument that he owes his financing agency rather than the individual from which he ordered the motor home. Even though there was no proof of any written contractual arrangement between Gage and Tiffin, "[o]rdinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof . . ." Code Ann. § 3-107 (Code § 3-107). Furthermore, "[a]n action on open account may be based either on an express or an implied promise to pay . . ." *Gordy Tire Co. v. Bulman,* 96 Ga. App. 739, 741 (101 SE2d 220). Accord, *Hurt & Quinn, Inc. v. Keen,* 89 Ga.

App. 4, 6 (78 SE2d 345). Accordingly, Gage maintained an open account with Tiffin. Tiffin was authorized to bring an action on open account under the facts delineated above and the evidence introduced supported the verdict of the jury. This enumeration is without merit.

2. Defendant objected to a question by the plaintiff of Gage: "On or about August the second. At that time were you under a security agreement with anyone as to your inventory . . .?" Defendant objected on the grounds that it called for a "legal conclusion."

Evidentiary experts apparently are reluctant to attack the thorny issue of "legal conclusions." See Green, Ga. Law of Evidence 285-286, Opinion Evid. § 113; Agnor's Ga. Evidence 137, § 9-3. Undoubtedly it is difficult to establish encompassing parameters for such term when Wigmore uses many pages to distinguish between "opinion" and "fact." VII Wigmore on Evidence 2 et seq. McCormick also gives this term the "broad brush" treatment. McCormick on Evidence (2d Ed.) 28. Our Supreme Court has held that "[t]he expert may aid the jury, but he can not act as a member of the jury; nor, while on the stand, can he transcend the functions of a witness and, under the guise of giving testimony, state a legal conclusion." *Travelers Ins. Co. v. Thornton,* 119 Ga. 455, 456 (46 SE 678). The court earlier had held that a doctor could give his opinion on physical and medical facts but not "legal classification of such facts" which was "a mixed question of law and fact" and it would have been improper to permit the witness to draw the conclusion which should "be determined in the light of all the evidence." Id. at 456. Agnor agrees that "[i]t is only where the drawing of the inference requires a mixture of law and fact that the question is not a proper one for opinion evidence." Agnor's Ga. Evidence 136, § 9-3. However, as related earlier by Wigmore, sometimes it is difficult to distinguish between an "opinion" and a "fact." VII Wigmore on Evidence 14, § 1919. Corpus Juris states: "As a general rule, a witness may not state a conclusion of law; but testimony which in the main is a mere statement of fact may be admitted, even though it rests to a certain extent on the application of legal principles." 32 CJS 91, Evidence, § 453. We find this rule to apply in the instant case. There was no issue as to

whether there was or was not in existence a security contract. The question asked was trying to elicit whether Gage had a financing arrangement which required Tiffin to guarantee Gage's payments to Finance America and the finance company to inventory the motor homes on Gage's sales lot to assure presence of the secured item. Thus, the thrust of the question and the main import of the answer was the fact that there was a financing arrangement — commonly called "floor-planning," in which Tiffin guaranteed Gage's payments to Finance America.

Accordingly, it was only incidental that the agreement referred to was a "security agreement." The contract had to be called something to direct the witnesses' attention to the subject matter. If we were to hold inadmissible — questions which included a legal term in their body — on the ground that it called for a legal conclusion, then questions could not be asked which included such common but legal words as: agent, arrest, assume, contract, deed, divorce, gift, license, marriage, mortgage, partner, etc. See *Sankey & Shorter v. Columbus Iron Works,* 44 Ga. 228 (2); *Scott v. Kelly-Springfield Tire Co.,* 33 Ga. App. 297 (6) (125 SE 773); *Blaylock v. Prudential Ins. Co.,* 84 Ga. App. 641, 642 (67 SE2d 173); *Salters v. Pugmire Lincoln-Mercury,* 124 Ga. App. 414, 415 (184 SE2d 56).

From discussion of the above authorities it is evident that whether a question calls for a legal conclusion or principally a fact which incidentally involves a legal word or phrase, is within the sound discretion of the trial court. 31 AmJur2d 497, Expert and Opinion Evidence, § 3; Id. 500, § 6. Here the answer did not invade the province of the jury as to whether or not there was or was not a security contract. Neither did it invade the province of the trial court by giving a legal opinion as to a point of law. We find no abuse of discretion of the trial court and no harm to the defendant by permitting the question and answer.

3. Defendant contends the trial court violated the best evidence rule by permitting Tiffin to testify that he was required "to make good on payments" to Finance America "if the dealer defaulted." We need not reach the merit of this argument as Mr. Cross, the sales manager for

Tiffin, testified earlier that under the "floor plan" with Finance America "Mr. Tiffin would stand behind it and guarantee their performance to the floor plan people [Finance America] or to the lending institution . . . he would guarantee their performance. In other words, he had to make a deal, guarantee payment to the floor plan people. In case the dealer defaulted or something like this . . ." Where evidence to the same effect has already been introduced without objection, it is not error requiring a new trial to admit similar evidence — over objection — at a later time. *Pound v. Smith,* 101 Ga. App. 500 (1) (114 SE2d 280); *Wainwright v. Conger,* 113 Ga. App. 27 (2) (147 SE2d 28); *Tucker v. Mappin,* 149 Ga. App. 847 (1b) (256 SE2d 135).

4. It was not error for the trial court to charge the jury on contract. Plaintiff based this action, in part, on open account. An open account is a species of contract. See 1 Williston on Contracts 22, § 12; 3A Corbin on Contracts 303, § 698; 1 CJS 580, Account, Action On, § 2a; 1 AmJur2d 373, Accounts and Accounting, § 4. This court has held that an action "on 'open account' . . . was an allegation that the obligation arose ex contractu" (*Allied Store Utilities Co. v. Bennett,* 64 Ga. App. 524, 528 (13 SE2d 906)) and "may be based either on an express or an implied promise to pay." *Gordy Tire Co. v. Bulman,* 96 Ga. App. 739, 741, supra, Accord, *Hurt & Quinn, Inc. v. Keen,* supra.

Further, Gage defended on the ground that he had telephoned Tiffin and "made an agreement to pay it [the amount due on the motor home] to Tiffin Motor Homes . . . and he [Tiffin] didn't show up with the title to collect the money." In effect, Gage testified that he converted the "open account" into an "account stated" through an agreement with Tiffin whereby he agreed to pay the amount due on the motor home if Tiffin would bring the "C.[ertificate] of O.[rigin]." Tiffin denied that he entered into such an agreement — or contract.

"An account stated is an agreement by which persons who have had previous transactions with each other fix the amount due in respect to such transactions and the one indebted promises payment of the balance. [Cits.] . . . In order to convert an open account into an account stated, an oral agreement as to the amount and an oral promise to

pay are sufficient. [Cits.]" *Lawson v. Dixie Feed &c. Co.,* 112 Ga. App. 562, 563-564 (145 SE2d 820); accord, *Murray v. Lightsey,* 58 Ga. App. 100, 101 (197 SE 870); *Sinclair Refining Co. v. Scott,* 60 Ga. App. 76, 77 (2 SE2d 755). Thus, the defendant testified that he promised to pay the balance due in return for the promise of the plaintiff to bring the manufacturer's statement of origin to him. This "account stated" was a contractual arrangement (6 Corbin on Contracts 233, 237, 238, §§ 1303, 1304) whereby the consideration was an alleged promise for a promise. See Code Ann. § 20-304 (Code § 20-304); *Venable v. Block,* 138 Ga. App. 215, 216 (225 SE2d 755); 6 Corbin on Contracts 243, § 1306. We find no error in the court instructing the jury on an issue made by the defendant's testimony. Cf. *Lincoln Land Co. v. Palfery,* 130 Ga. App. 407, 414 (203 SE2d 597).

*Judgment affirmed. Shulman and Carley, JJ., concur.*

ARGUED FEBRUARY 13, 1980 — DECIDED MARCH 4, 1980.

*Hugh Gordon,* for appellants.
*David J. Kelley,* for appellee.