69767. THE IVY INN, INC. et al. v. METROPOLITAN
ATLANTA RAPID TRANSIT AUTHORITY.
(334 SE2d 319)

CARLEY, Judge.

A portion of property owned by appellant-condemnees was condemned in connection with the construction of a transit station by appellee-Metropolitan Atlanta Rapid Transit Authority (MARTA). The Special Master entered his award, and condemnees filed an appeal in the Superior Court of Fulton County. The jury returned a verdict for condemnees in an amount greater than the award of the Special Master. Judgment was entered on this verdict, from which condemnees bring the instant appeal.

1. Condemnees had stipulated that consequential benefits to the remainder equalled or exceeded the consequential damages thereto and that they were therefore not seeking compensation for consequential damages. However, during the jury trial, testimony was admitted regarding the specific value of the consequential benefits to the remainder after the taking. Condemnees contend that, in view of their stipulation, this testimony was irrelevant and prejudicial and that its admission was reversible error.

Resolution of this issue requires recognition at the outset that, under our law, although property must be evaluated as of the date of taking, a condemnee is entitled to the value of the property on that date as enhanced because of the general knowledge of the proposed public improvement to be made after taking. *Hard v. Housing Auth. of Atlanta*, 219 Ga. 74 (132 SE2d 25) (1963). The instant case was tried with this principle in mind. The testimony of MARTA's experts placed a value of the property taken at between $1.25 per square foot

and $2.25 per square foot. The experts for the condemnees, however, valued the land taken at between $15 per square foot and $25 per square foot. In this connection, the condemnees' experts utilized comparable sales transactions occurring as late as December of 1983, although the date of taking was July 30, 1982. Obviously, the condemnees wanted the jury to believe that there had been a dramatic increase in the property condemned as of the date of taking as a result of the general knowledge that the contemplated improvements would be made after condemnation. In fact, in his opening statement, counsel for the condemnees told the jury: "In determining how much that piece of property is worth, the part that they took, and in making your determination as to what that property was worth on July 30, 1982, you must consider any appreciation in the value of that property because it was known in the public and in the businessplace what was going to happen. In other words, if this property has appreciated because of the knowledge that the MARTA station was going in there, the knowledge that there was going to be a MARTA station, the property owner whose property is taken is entitled to that appreciation value."

It is undisputed that condemnees had a right to the enhanced value as of the date of taking as a result of such general knowledge of anticipated improvements. By the same token, however, MARTA's witnesses, having been qualified as experts, had the right to explain their methodology in arriving at their estimate of market value as of the date of taking and to support their opinion that any "increase" in value was not as a result of enhancement by virtue of public knowledge, but rather occurred *after* the date of taking as a result of consequential benefits arising from the completion of the contemplated improvements.

The trial court clearly informed the jury that consequential benefits could not be offset against the value of the property actually taken and made sure that the jury understood the absolute admonition of the law of Georgia that consequential benefits can be set off *only* against consequential damages. The court charged the jury as follows: "Ladies and gentlemen of the jury, I charge you that under the law and Constitution, of the State of Georgia where a part of a tract is taken, as in this case, the owner of the land is entitled to payment in full for the property taken. *Consequential benefits* to the remaining land *may be shown only as an offset against consequential damages* to the remaining land and *may not be used to reduce the recovery of the property owner for the value of the land actually taken.* In this case, the condemnee has stipulated that the consequential benefits to the remainder of his land by virtue of the taking equal or exceed the consequential damages. Since consequential benefits can only be considered as an offset against consequential dam-

ages, you *would not be authorized to consider any enhancement in value of the remainder of the condemnee's property as an offset or reduction of the amount you award for the property actually taken.* Your sole consideration in this case will be to determine the fair market value of the property taken from the condemnee on the date of taking and award that amount to the condemnee." (Emphasis supplied.)

If, on the basis of the entire record in this case, the testimony of MARTA's experts as to consequential damages and consequential benefits were irrelevant, the admission of that testimony would constitute error. However, in *Merritt v. Dept. of Transp.*, 147 Ga. App. 316 (1) (248 SE2d 689) (1978), rev'd on other grounds 243 Ga. 52 (252 SE2d 508) (1979), this court found no error in the admission of evidence as to consequential benefits to the remaining property where, as here, the condemnee sought no consequential damages. It is true that in *Merritt, one* of the reasons for the court's decision was the absence of testimony as to the monetary value of the "benefit." However, the court then said: "*Furthermore,* it is clear from condemnee['s] . . . testimony that the proximity of the property to a proposed interchange corner *was a factor he himself had considered in arriving at his own estimate of the property's worth.* For *these* reasons, we hold that the trial court did not err in allowing the evidence. . . .*"* (Emphasis supplied.) *Merritt v. Dept. of Transp.*, supra, 317. In view of the contrasting testimony as to the value of the land actually taken as given by the experts for MARTA on the one hand and by the condemnees' experts on the other, we find that the evidence was relevant. The evidence as to consequential damages and consequential benefits being relevant in the context of this case as tried by the parties, there was no error in its admission.

2. Condemnees contend the trial court erred by refusing to admit an exhibit consisting of architects' drawings and site plans for a project being developed by a potential purchaser of their property. "Questions of relevancy are within the domain of the trial court. Absent a showing that the trial court abused its discretion in refusing to admit evidence on the grounds of its irrelevancy, the court's ruling will not be disturbed on appeal. [Cit.]" *Allstate Ins. Co. v. McGee,* 157 Ga. App. 53, 55 (7) (276 SE2d 108) (1981). The exhibit that condemnees sought to introduce contained the proposed plans for construction on a neighboring property. Although there was testimony that the same developer was contemplating multiple high-rise buildings for condemnees' property, there was no evidence to relate the exhibit's plans with condemnees' property. The trial court was authorized to find that evidence of proposed plans for adjacent property was not relevant to condemnation proceedings instituted against condemnees' property.

3. Condemnees contend the trial court erred by refusing to admit a copy of the application for rezoning of their remaining property. At the time the application was proffered, testimony had been presented that condemnees had a contract to sell the remaining property which was contingent upon obtaining permission to re-zone the property, that an application to re-zone the property had been filed, and that the application was still pending. Because condemnees' witness had been allowed to testify to the same matters as shown in the excluded document, any error was harmless. *Orkin Exterminating Co. v. Dauer,* 146 Ga. App. 61, 63 (3) (245 SE2d 320) (1978).

4. Condemnees contend the trial court erred by allowing one of their witnesses, Mr. Carter, to answer certain questions on cross-examination about the potential purchaser's obligations under the contract for sale of condemnees' remaining property. The assertion is that MARTA was erroneously allowed to elicit "legal conclusions" from Mr. Carter concerning the contract.

Over MARTA's objection, the trial court had allowed testimony concerning the underlying contract in question, which had been identified as condemnees' exhibit. Presumably, condemnees were attempting to show that the planned development for their remainder enhanced the value of the property. As discussed in Division 3, the sale was contingent upon re-zoning as clearly evidenced by what condemnees refer to as the "unambiguous" contract and the testimony also clearly established that the sale had not yet been consummated. Thus, at the time of Mr. Carter's cross-examination, MARTA was facing a situation wherein a substantial amount of testimony had already been given concerning the contract and the negotiations surrounding it. The contract itself was subsequently admitted into evidence and consequently went out with the jury. It is within this context that this enumeration must be considered.

The record demonstrates that there was some question concerning the development of the remainder planned by the prospective buyers. Mr. Carter had testified earlier in his cross-examination that the absorption potential for the planned office building would be affected by neighboring projects which had not been delayed by re-zoning contingencies and might, therefore, at least have to be redesigned. When Mr. Carter was first asked a question concerning the obligation of the prospective purchasers to consummate the sale, there was no objection raised by condemnees. Mr. Carter's response to that question did not constitute a legal conclusion. He merely answered that the prospective purchasers "have just got time and probably a hundred grand in trying to get to the closing." It was only when the question was repeated that condemnees objected that it called for a legal conclusion. When the objection was overruled and Mr. Carter was again asked a similar question, his response was: "It's a liquidated

damages contract." A review of the "unambiguous" contract which was in evidence demonstrates that Section 14 thereof does in fact provide for liquidated damages in the event of default by either party.

Mr. Carter was then asked, in several different ways because he did not understand the question, whether the prospective purchasers could "walk away from the deal." At no time did condemnees object to these questions and Mr. Carter's eventual answer was "Yes, they could." This answer must, of course, be considered in the context and light of his earlier statement that "[i]t's a liquidated damages contract." However, condemnees moved to strike Mr. Carter's answer as a legal conclusion and as being contrary to the contract provisions since, according to counsel, the option period had expired and the only contingency was zoning. The trial court took the motion to strike under advisement and it was never raised again.

Under these circumstances, it seems clear that no response by Mr. Carter constituted an impermissible "legal conclusion." The adjudication of the rights and obligations of the parties under the unambiguous contract was not an ultimate issue in the case. The contract was an issue only because condemnees had succeeded in making it one for the purpose of demonstrating the value of their property actually taken. Mr. Carter's responses can only be logically construed as informing the jury that, under the terms of the "unambiguous" contract, which they would eventually see, the sale was *still* contingent on rezoning and the prospective purchasers could still refuse to consummate the sale in exchange for payment of liquidated damages. "[T]he thrust of the question and the main import of the answer was *the fact* that there was a [contingent contract] . . . in which [there was a provision for liquidated damages]. . . . Here the answer did not invade the province of the jury. . . . Neither did it invade the province of the trial court by giving a legal opinion as to a point of law. We find no abuse of discretion of the trial court and no harm to the [condemnees] by permitting the question and answer." (Emphasis supplied.) *Gage v. Tiffin Motor Homes*, 153 Ga. App. 704, 708 (266 SE2d 345) (1980).

The above analysis finding no error clearly would apply to the initial question which prompted condemnees' objection and to which Mr. Carter made his response concerning liquidated damages. Even if we were to ignore the context in which Mr. Carter's subsequent responses were made and conclude that the above analysis was not dispositive as to the absence of any error in that regard, the admission of those responses would still not constitute a ground for reversing the judgment in the case at bar. Although condemnees moved to strike those responses, they never invoked a ruling on their motion after the trial court indicated that it would be taken under advisement. "It is well settled that where an objection is made to the admission of testi-

mony and the trial judge makes no definite ruling on its admissibility but defers his ruling, before the reviewing court will consider whether such objection should have been sustained a further ruling by the trial court must be invoked. [Cits.]" *Augusta Roofing & Metal Works v. Clemmons*, 97 Ga. App. 576, 577 (1) (103 SE2d 583) (1958).

*Judgment affirmed. McMurray, P. J., Pope, Benham and Beasley, JJ., concur. Banke, C. J., Deen, P. J., Birdsong, P. J., and Sognier, J., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent from the majority's opinion affirming the judgment below and would reverse this case on the bases that the trial court erroneously admitted testimony about consequential benefits to appellants' remaining property and that the trial court improperly allowed a witness to give a legal conclusion to questions posed to him by counsel for appellee.

"The law is clear that consequential benefits to remaining lands may be shown only as an offset against consequential damages and that they may not be used as an offset against the value of the land actually taken. [Cits.]" *Merritt v. Dept. of Transp.*, 147 Ga. App. 316, 317 (1) (248 SE2d 689) (1978). At the beginning of the trial, appellants stipulated clearly and unequivocally that benefits to the remainder equalled or exceeded consequential damages to the property and therefore that they were not seeking compensation for consequential damages. During the course of the trial, appellee presented two expert witnesses who testified on the question of value. John Buckner testified that consequential damages to the property totalled $70,475 and that consequential benefits to the remainder after taking amounted to $519,922. Richard Lawrence gave no total for consequential damages but testified when first asked whether there were any consequential damages or benefits to the property that there was a "substantial net benefit." Appellee's counsel next asked, "[w]ould that be greater or less than any potential consequential damage?" Lawrence replied, "Much greater." Appellee's counsel then asked Lawrence specifically to give a value to the remainder after taking. In reply Lawrence stated the sum of $1,500,000. Appropriate objections were made.

The majority holds that the trial court's charge to the jury on the issue of consequential benefits and damages was sufficient to erase the prejudicial effect on the jury of testimony which informed the jury that appellants were benefitting by $519,922 and $1,500,000, respectively, from appellee's taking. In *Merritt*, supra, this court upheld the admission of evidence on consequential benefits only after noting that "the trial judge was scrupulous to prevent any witness from attaching a monetary value to this benefit," that the jury was "instructed unambiguously" on the law involving this issue, and that the evidence

in controversy was relevant to various other matters. Id. at 317. It was "[f]or these reasons" the *Merritt* court held that the trial court did not err by allowing the evidence on consequential benefits, "despite its tendency to show that the remainders were benefited by some unspecified amount." Id. In a case such as the one sub judice where the trial court permitted witnesses to attach *specific* monetary values to the benefits accruing to appellants' remaining property and where there is no comparable relevance to the objected to testimony, I cannot agree with the majority that a correct jury charge on the issue is sufficient under *Merritt*, supra, to offset the prejudicial effect of that testimony on the jury.

Further, I disagree with that part of the majority's opinion holding that no reversible error was committed by the admission of testimony by witness Carter in response to appellee's counsel's questions involving a third party's obligation under a contract for sale of appellants' property. As a general rule, a witness may not state a conclusion of law. *Gage v. Tiffin Motor Homes*, 153 Ga. App. 704, 707 (2) (266 SE2d 345) (1980); see also *Gellis v. B.L.I. Constr. Co.*, 148 Ga. App. 527, 540 (5) (251 SE2d 800) (1978). Without belaboring the point, my review of the transcript discloses that the questions posed by appellee's counsel elicited legal conclusions from the witness, that timely objection was made by appellants' counsel, and that the trial court's response constituted a final ruling on this matter. Therefore, I would reverse the judgment of the court below.

I am authorized to state that Chief Judge Banke, Presiding Judge Deen and Presiding Judge Birdsong join in this dissent.

DECIDED JULY 15, 1985 —
REHEARING DENIED JULY 31, 1985 —

*Frank Love, Jr.*, for appellants.
*Charles N. Pursley, Jr.*, for appellee.