S07A0518. THOMPSON v. CENTRAL OF GEORGIA RAILROAD.
(646 SE2d 669)

BENHAM, Justice.

In 2006, appellee Central of Georgia Railroad ("Railroad") filed a petition to quiet title against all the world with regard to a 13.8-acre tract of land approximately 250 feet deep and 2,500 feet long, lying along one side of a railway in Land Lots 57 and 58 of the Seventh District in Jones County. See OCGA § 23-3-60 et seq. Appellant Ellistine Newton Thompson was the lone respondent to the Railroad's petition, and she claimed ownership of a 780 feet-long x 250 feet-wide portion of the tract claimed by the Railroad. The Railroad also sought removal from the Jones County property records of affidavits of possession filed in 2003 by appellant Thompson concerning the portion of which she claimed ownership. The special master appointed by the superior court held an evidentiary hearing and, following an inspection of the site, entered a report in which he recommended the issuance of a declaration that title to the disputed property was vested in the Railroad free of any claims of Ms. Thompson and that Thompson's 2003 affidavits of possession be stricken from the deed records. In a summary order entered October 11, 2006, the superior court adopted the special master's recommendations.

The chains of title of both the railroad and Ms. Thompson are traceable to common grantors, James Van Buren and Mary Quackenbush. In 1889, the grantors conveyed to the railroad's predecessor-in-title[1] a tract described as being in Land Lot 58 and extending along the railway's right of way for 2,500 feet and a depth of 249 feet. Attached to the deed and referred to therein was a hand-drawn diagram depicting the property conveyed. The deed was recorded in 1889.

In 1906, Van Buren and Quackenbush conveyed 100 acres to Patterson by a recorded deed that described the property conveyed as being in Land Lot 59 and bounded "on the North by the Central of Georgia Railway Company; on the West by land owned by Mariah Cole; and on the South and East by lands owned by [the grantors]." When Patterson's heirs conveyed 34 acres to Moore in 1938, the recorded deed described the property as being bounded, in pertinent part, "on the North by the Central of Ga. Railroad Company main line; on the West by the Central of Ga. Ry. Co. being the [Athens] branch of said road. . . ." Moore conveyed the 34 acres to Newton, the mother of appellant Thompson, in 1945 and the recorded deed described the property as being bounded "on the North by the Macon

---

[1] The grantee was Central Railroad & Banking Company, which conveyed its interest by deed to appellee in 1900.

& Athens Railroad, Branch Line of the Central of Georgia Railway Company, [and] on the East by the Macon & Savannah Railroad Mainline of the Central of Georgia Railway Company. . . ." When Newton quitclaimed 27 acres to her daughter, Thompson, in 2002, the quitclaim deed described the pertinent property boundaries as had the 1945 Moore-Newton deed.

1. Asserting that the deeds which designated the railroad as the boundary conveyed fee title to the centerline of the railroad (see *Descendants of Bulloch, Bussey & Co. v. Fowler*, 267 Ga. 79 (475 SE2d 587) (1996) (involving claims to an abandoned railroad right-of-way)), that a 1973 survey showed the disputed property as belonging to Thompson and her predecessor-in-title, and that Thompson and her predecessor-in-title have continuously owned and exclusively used and occupied their property, including the disputed parcel, since 1945, thereby acquiring title to the disputed parcel by adverse possession under claim of right (OCGA § 44-5-161 (a)) and by prescription under color of title (OCGA § 44-5-164), appellant Thompson contends the trial court erred when it did not decree that she holds fee simple title to the disputed parcel.

None of the facts upon which appellant relies was undisputed. The Railroad presented evidence that the 1973 survey upon which appellant relied lacked a requirement for recordation, the surveyor's signature on his seal, the absence of which indicated it was a preliminary "work in progress." Although appellant testified her mother had permitted hunting, gardening, car storage, and a large storage tank on the property, the registered, licensed land surveyor who prepared a survey for the Railroad and who was accepted as an expert in land surveying, testified he had visited the property three times since 2001 and the disputed parcel showed no signs of having been disturbed by any of these activities. In addition, remarks made by appellant to the special master during the on-site inspection and recorded by the court reporter could be interpreted as supportive of the Railroad's position that activities authorized by appellant and her mother took place on land other than the disputed parcel. Appellant testified to ownership of approximately 34 acres which included the disputed parcel, and the Railroad presented evidence she and her predecessor-in-title had owned approximately 32.52 acres that did not include the disputed parcel. The tax commissioner of Jones County testified that the Railroad had paid taxes through the utilities division of the Georgia Department of Revenue on the 13.89 acres the Railroad claimed, and appellant had paid taxes on four parcels totaling 32.52 acres adjacent to the Railroad's property.

In the absence of a timely request for jury trial in a quiet title action submitted to a special master, the special master "is the arbiter of law and fact and decides all issues in the case unless the master 'on

his own initiative . . . (requires) a trial by a jury of any question of fact.' [Cit.]" *Thornton v. REB Properties*, 237 Ga. 59 (226 SE2d 741) (1976). Neither the special master to whom the petition was submitted nor the trial court which issued the judgment set forth findings of fact which led to the conclusion that title to the disputed parcel was vested in the Railroad, and no party requested that findings of fact be made. Accordingly, the special master's recommendation is analogous to a jury verdict returned on a general verdict form, and the trial court approved that verdict by entering judgment thereon. In such a case, the appellate court affirms the judgment if there is any evidence to support it and construes the evidence with every inference and presumption in favor of upholding the verdict and judgment. Cf. *Dailey v. Echols*, 265 Ga. App. 459, 460 (594 SE2d 658) (2004). In so doing, we conclude there was evidence to support the determination of the special master and the trial court that appellant did not establish prescriptive title to the disputed parcel and affirm the trial court's judgment in favor of the Railroad.

2. Noting that the Railroad did not assert ownership of the disputed parcel between 1899 and 2001, appellant asserts the trial court erred when it did not rule that the Railroad's petition to quiet title was barred by the equitable doctrine of laches. In 2001, after appellant's brother cut timber on the disputed parcel, the Railroad promptly advised appellant's predecessor-in-title that it viewed the act as one of trespass which it would not permit; in 2006, three years after appellant filed affidavits of possession which constituted a cloud upon the Railroad's title, the Railroad filed its petition to quiet title.

"[C]ourts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." OCGA § 9-3-3. Laches bars an equitable claim "when the truth cannot be established fairly due to a long delay and the death of essential witnesses." *Stone v. Williams*, 265 Ga. 480 (458 SE2d 343) (1995). "[L]aches is not merely a question of time, but principally a matter of inequity in permitting the claim to be enforced." *Swanson v. Swanson*, 269 Ga. 674, 676 (2) (501 SE2d 491) (1998). Without any evidence regarding when the Railroad became aware of the appellant's affidavits of possession, the reason for the Railroad's delay in filing its petition to quiet title and whether it could have acted sooner than it did, and whether any evidence was lost due to the delay, we cannot say the trial court erred when it did not bar the claim based on laches. Compare id. (laches barred equitable claim made 11 years after complainant knew of defendant's adverse claim); *Stone v. Williams*, supra (laches barred equitable claim brought 35 years after it allegedly came into being and after death of alleged grantor).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 4, 2007 —
RECONSIDERATION DENIED JULY 12, 2007.

*McLarty, Robinson & Van Voorhies, John E. Robinson, Gregory
H. Blazer, Mark F. Dehler, Perrie, Bone & Burr, C. Terry Blanton,
Dodson, Feldman & Dorough, William H. Dodson II*, for appellant.
*Hall, Bloch, Garland & Meyer, Benjamin M. Garland, Bert King*,
for appellee.