### S09A0988. SAFFO et al. v. FOXWORTHY, INC. et al.
(687 SE2d 463)

NAHMIAS, Justice.

The appellants contend the trial court erred in relying on OCGA § 48-4-47 to dismiss their complaint against the appellees to recover property sold at a tax sale to satisfy unpaid property taxes. OCGA § 48-4-47 provides that once the right of redemption has been foreclosed by the providing of notice to the delinquent taxpayer and the passing of the barment date, the delinquent taxpayer cannot file or maintain suit to invalidate the tax deed without first paying or tendering to the new owner the full redemption amount, which includes the price paid for the property at the tax sale plus taxes, costs, and penalties that escalate with each passing year. The appellants, who are delinquent taxpayers, did not pay or tender the redemption amount before or after filing suit against the new owner to challenge the validity of the tax sale of their residence and the resulting tax deed. The appellants argue that the trial court nevertheless erred in dismissing their complaint, because an exception to the statutory payment or tender requirement applies and because the payment or tender requirement of OCGA § 48-4-47 violates their constitutional due process rights. We reject those arguments and affirm.

1. The delinquent taxpayers, appellants Sallie M. Saffo and her husband, Forrest J. Saffo, purchased the property at issue in 1983. For the next seven years, the property taxes were paid out of an escrow account connected with the mortgage. The Saffos knew that they had to pay property taxes and knew that the taxes were no longer being paid from the escrow account after 1990. Nevertheless, from 1991 on, the Saffos did not pay property taxes. A tax lien attached to the property, which was later foreclosed, and on February 1, 2000, the Fulton County Sheriff sold the property at a tax sale to the highest bidder, appellee Foxworthy, Inc., for $51,406.88.

Under OCGA § 48-4-40 (1), the Saffos had an initial period of 12 months, until February 1, 2001, to redeem the property by paying the redemption amount to Foxworthy. They failed to do so. On February 8, 2001, shortly after the expiration of the initial redemption period, Mr. Saffo met with Foxworthy's day-to-day manager, appellee Charles L. Wilson III, to ask about redeeming the property. Although the initial 12-month redemption period had expired, the Saffos could still redeem the property by paying Foxworthy the redemption amount because Foxworthy had not yet served notice of foreclosure of the right of redemption. Wilson explained the redemption requirements to Mr. Saffo, but the Saffos again did not redeem the property.

A little more than a year later, on May 21, 2002, Foxworthy had

the Sheriff serve the Saffos with a Notice of Foreclosure of Equity of Redemption by personally serving Mr. Saffo at the property. The notice set a barment date of June 20, 2002, and informed the Saffos that the right of redemption would expire and be forever barred on that date. Notice was also given by publication. A year and a half later, the Saffos still had not paid Foxworthy the redemption amount, which by that point had increased to $112,516, and Foxworthy began demanding possession of the premises.

From February through April 2004, Foxworthy and the Saffos unsuccessfully negotiated to resolve the matter. In June 2004, Foxworthy sent the Saffos a formal demand for possession by July 1, 2004. On that date, instead of vacating the property, the Saffos filed suit against Foxworthy and Wilson in the Fulton County Superior Court, alleging various tort claims and seeking injunctive relief to prevent their removal from the residence. Foxworthy answered and counterclaimed to quiet title to the property and to recover damages for conversion and trespass by the Saffos. Wilson answered as well.

In light of the Saffos' allegations of inadequate notice in 2002, Foxworthy served the Saffos with a second Notice of Foreclosure of Equity of Redemption on November 4, 2004. The barment date specified in the notice was December 28, 2004. Once again, the Saffos failed to redeem the property.

On October 3, 2008, the trial court conducted a hearing on the parties' cross-motions to dismiss and for summary judgment. On October 14, 2008, the court entered an order finding that the Saffos' right to redeem the property was permanently barred because the Saffos had not paid or tendered the redemption amount. The court further held that, to the extent the Saffos were arguing that the tax sale must be invalidated because the Sheriff did not comply with the statutory tax sale requirements, their remedy would be an action against the Sheriff, not Foxworthy and Wilson. Accordingly, the trial court granted Foxworthy and Wilson's motions to dismiss the complaint and for summary judgment, denied the Saffos' motions to dismiss the counterclaim and for partial summary judgment, and reiterated an earlier order referring Foxworthy's counterclaim to a special master for a report and recommendation. The Saffos appealed.[1]

2. The Saffos raise two claims on appeal. First, they argue that the trial court erred in holding that OCGA § 48-4-47 bars their suit challenging the validity of the tax sale and resulting tax deed to Foxworthy. Second, they contend that OCGA § 48-4-47 violates their constitutional right to due process of law. Before addressing the

---

[1] We hereby deny the motion filed by Foxworthy and Wilson to dismiss the appeal.

Saffos' specific claims, a review of the relevant statutory scheme is in order.

The article of the Georgia Code governing redemption of property following a tax sale to satisfy unpaid taxes consists of OCGA §§ 48-4-40 to 48-4-48. Following a tax sale, the delinquent taxpayer has the right to redeem the property by paying the amount required for redemption, the redemption price. See OCGA § 48-4-40. The redemption price is the amount paid for the property at the tax sale, as reflected in the tax deed, plus certain other taxes, costs, and penalties that increase as time passes. See OCGA § 48-4-42; *Mark Turner Properties, Inc. v. Evans*, 274 Ga. 547, 550 (554 SE2d 492) (2001). The effect of redeeming the property is to place title back in the hands of the delinquent taxpayer, see OCGA § 48-4-43, with the tax delinquency resolved.

The delinquent taxpayer has an initial period of 12 months from the date of the tax sale in which to redeem the property. See OCGA § 48-4-40 (1). At the expiration of the 12-month period, the new owner has the ability to terminate and forever bar the delinquent taxpayer's right of redemption by setting a barment date and causing a notice of foreclosure to be served 30 days prior to the barment date. See OCGA § 48-4-46 (b); *Dixon v. Conway*, 262 Ga. 709, 709 (425 SE2d 651) (1993). The notice of foreclosure must be served on the delinquent taxpayer, any occupant of the property, and all holders of any right, title, or interest in, or lien on, the property. See OCGA § 48-4-45 (a) (1) (A)-(C). For tax sales on or after July 1, 1989, the notice of foreclosure must also be published. See OCGA § 48-4-45 (a) (3). The form of the notice is statutorily prescribed. See OCGA § 48-4-46 (a). Service by the Sheriff must be made personally, if possible, and by publication otherwise, but leaving a copy of the notice at the residence of any person required to be served is sufficient. See OCGA § 48-4-46 (b), (c).

Service of the notice of foreclosure of the right of redemption bars the filing or continuance of any action to set aside, cancel, or in any way invalidate the tax deed referred to in the notice or the title conveyed by the tax deed, unless the plaintiff first pays or tenders the full redemption amount. See OCGA § 48-4-47 (a). The Code provides only two exceptions to the payment or tender requirement: (1) where it clearly appears that the unpaid taxes which triggered the tax sale were not actually due at the time of the tax sale; and (2) where it clearly appears that "[s]ervice or notice was not given as required in this article." See OCGA § 48-4-47 (b) (1), (2). With this background, we turn to the Saffos' two claims.

3. The Saffos contend the trial court erred in applying OCGA § 48-4-47 to bar their lawsuit challenging the tax sale and resulting tax deed to Foxworthy because they were not given timely

notice of foreclosure of the right of redemption. The Saffos focus on the service date of May 21, 2002, reflected in the first Notice of Foreclosure of Equity of Redemption. Thirty days after the notice was served would be June 20, 2002. As the Saffos correctly note, the first notice states that "[t]he right to redeem the within and foregoing described property will expire and be forever barred *on and after* June 20, 2002," and later says that "[t]he subject property may be redeemed at any time *before* June 20, 2002, by payment of the redemption price as fixed and provided for by law." (Emphasis supplied.) See OCGA § 48-4-46. Thus, the Saffos argue that the second exception to the payment or tender requirement of OCGA § 48-4-47 applies, because it clearly appears that "[s]ervice or notice [of foreclosure of the right of redemption] was not given as required in this article." OCGA § 48-4-47 (b).

We need not decide if this issue rendered the first notice inadequate even where no effort was made to redeem the property for many months after service. That is because the Saffos concede, as they must, that after they filed this lawsuit, Foxworthy caused a *second* Notice of Foreclosure of Equity of Redemption to be served on them on November 4, 2004, which specified a barment date of December 28, 2004. The Saffos clearly received much more than the requisite 30 days' notice, and OCGA § 48-4-47 (a) bars not only the "fil[ing]" of a suit to set aside a tax deed without payment or tender of the redemption amount, but also "maintain[ing]" such a suit. It is undisputed that the Saffos never paid or tendered the redemption amount. Accordingly, the trial court did not err in dismissing the Saffos' complaint for failing to pay or tender the redemption amount as required by OCGA § 48-4-47.

4. The Saffos note that in this case, the redemption amount of $112,516 dwarfs the original $2,000 in unpaid taxes the property was sold to satisfy, and it was more than double what Foxworthy paid for the property at the tax sale in 2000 due to the addition of taxes, costs, and penalties, see OCGA § 48-4-42. They claim that requiring them to pay or tender this large sum in order to challenge the tax sale effectively deprived them of notice and an opportunity to be heard by a judicial officer before the taking of their property, in violation of their constitutional right to due process of law,[2] particularly because they allegedly were not given *actual* notice of the 2000 tax sale until after it took place. See *Jones v. Flowers*, 547 U. S. 220, 223 (126 SC 1708, 164 LE2d 415) (2006) ("Before a State may take property and

---

[2] See U. S. Const. Amend. XIV, Sec. I ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); Ga. Const. Art. I, Sec. I, Par. I ("No person shall be deprived of life, liberty, or property except by due process of law.").

sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner notice and opportunity for hearing appropriate to the nature of the case.") (citation and punctuation omitted). As the Saffos put it in their opening brief on appeal:

> If the tender of such a punitive redemption price is required before a landowner can ever be heard, then the entire tax sales process on its face, and as applied in Fulton County, is unconstitutional because it never allows for an adequate or meaningful opportunity to be heard either before or after the property is sold.

The Saffos are simply incorrect in claiming that due process requires that they be given "actual notice" before their property can be taken. As the United States Supreme Court has clearly explained, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U. S. at 226. Instead, what due process requires is that the government "provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Jones*, 547 U. S. at 226 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (70 SC 652, 94 LE 865) (1950)).

Georgia's statutory scheme requires that notice of foreclosure of the right of redemption be personally served, if possible, on the delinquent taxpayer, any occupant of the property, and anyone else with an interest of record in the property, as well as by publication. See OCGA § 48-4-45 (a) (1), (3). Notice by personal service certainly satisfies the requirements of due process, and the statutory scheme is not unconstitutional on its face.

The Saffos' as-applied challenge is equally unpersuasive. At the very latest, the Saffos had actual notice by February 8, 2001, when Mr. Saffo met with Wilson, that they would lose their property if they did not redeem it. The Saffos' assertion that they were required, in 2004, to come up with $112,516 "at the last possible moment" to prevent the loss of the property ignores this prior history. It also discounts the fact that it would have cost the Saffos much less than $112,516 to have redeemed the property three years earlier in 2001, because the statutory penalties, which accumulate annually, would not have been nearly so high. See OCGA § 48-4-42 (redemption amount includes "a premium of 20 percent of the amount for the first year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made and 10 percent for each year or fraction of a year thereafter").

Moreover, as the trial court correctly held, to the extent the Saffos complain of alleged defects in the Sheriff's implementation of the tax sale process, their remedy is a suit against the Sheriff, not a suit against the property's new owner or its manager. As we explained long ago:

> It is sufficient for the purchaser that the sheriff had competent authority to sell, and did sell, and that the defendant in fi. fa. had title to the property sold. The law requiring notice to be given, property advertised, etc., is directory to the officer. His neglect to observe these require-ments may subject him to a suit for damages at the instance of any party injured thereby, but will not affect the title of a bona fide purchaser at his sale.

*Haden v. Liberty Co.*, 183 Ga. 209, 211 (188 SE 29) (1936) (citation and punctuation omitted). Thus, "the rule in this state [is] that defects in following the notice provisions of the tax sale statute may give an injured party a claim for damages, but will not render the tax sale or the deed therefrom void," *GE Capital Mtg. Svcs. v. Clack*, 271 Ga. 82, 83 (515 SE2d 619) (1999) (citing *Sizemore v. Brown*, 179 Ga. App. 594 (347 SE2d 345) (1986)), and we recently reiterated that "any failure to provide the appropriate tax notice would not serve as a basis for nullifying the ultimate tax sale," *Davis v. Harpagon Co.*, 281 Ga. 250, 252 (637 SE2d 1) (2006). In other words, the Saffos may seek a hearing on the alleged defects in the tax sale in a damages action against the Sheriff, but they clearly have no right to notice followed by a hearing in an effort to set aside the tax deed on those grounds.

Nor have the Saffos otherwise been deprived of an " 'opportu-nity for hearing appropriate to the nature of the case.' " *Jones*, 547 U. S. at 223 (quoting *Mullane*, 339 U. S. at 313). The Saffos do not contend that they can pay the redemption amount. They do not even contend that they could repay Foxworthy what it paid for the property in 2000. Nor do the Saffos challenge, on constitutional or statutory grounds, the individual components of the redemption amount, i.e., the purchase price, the unpaid taxes, costs, and the escalating penalties. As a result, if this case proceeded to trial and the Saffos won, the redemption amount, including the unpaid taxes, would still be due, and presumably the tax sale process would start all over again. What the Saffos seek is not simply an opportunity to be heard before a neutral decision maker, but an opportunity to be heard that will result in the return of their property to them without having to pay for it. OCGA § 48-4-47 does not violate the Saffos' due process rights simply because, in effect, it prevents them and others

unwilling or unable to pay or tender the redemption amount from forcing the taxing authority, the new owner, and the trial court to engage in an apparent exercise in futility where, at the end of the day, they will still be in a position where they cannot retain their property. Perhaps because of this logic, although the "pay or tender" obligation of the redemption statute has existed for decades, the Saffos cite no relevant authority to support their argument that it is unconstitutional, nor have we found any.

"The enforcement and collection of taxes through the sale of the taxpayer's property [can be] a harsh procedure." *Wallace v. President Street, L.P.*, 263 Ga. 239, 240 (430 SE2d 1) (1993) (citation and punctuation omitted). But procedures may be harsh without being unconstitutional. In this case, the Saffos have failed to make out a valid claim that their due process rights have been violated. Accordingly, we reject their due process challenge to the constitutionality of OCGA § 48-4-47.

*Judgment affirmed. All the Justices concur.*

BENHAM, Justice, concurring.

"[T]he enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights of the property owner in the interpretation of such laws." (Citation and punctuation omitted.) *Wallace v. President Street, L.P.*, 263 Ga. 239 (1) (430 SE2d 1) (1993). While I find the majority's legal analysis to be sound under the current state of the law, I write because I nevertheless believe the result to be harsh and not in keeping with protecting homeowners' rights. Particularly problematic is OCGA § 48-4-47 (a), which requires the homeowner to pay the full redemption price as a condition to maintaining a suit over the validity of the tax sale. This requirement places an onerous burden on persons trying to save their homes. A small tax delinquency can quickly balloon into a substantially greater amount depending on the bid made on the courthouse steps. In this case, even if appellants had moved more quickly to redeem and had reacted before the redemption fee was compounded over time by interest and penalties, under our present non-judicial tax sale scheme, which does not allow for any consideration of hardship or ability to pay, appellants still had almost no chance to redeem their property after the tax sale occurred. That seems patently unfair, especially given the current economic environment. I recognize, however, that this is an issue only the legislature may address, and so I reluctantly concur with the judgment.

I am authorized to state that Chief Justice Hunstein joins this concurrence.

DECIDED NOVEMBER 23, 2009 —
RECONSIDERATION DENIED DECEMBER 15, 2009.

*Francis X. Moore*, for appellants.
*Baker, Donelson, Bearman, Caldwell & Berkowitz, Gary A. Barnes, Ellen M. Taylor, William A. Castings, Jr., Vincent D. Hyman, Janet S. Todd, Thurbert E. Baker, Attorney General, R. O. Lerer, Deputy Attorney General*, for appellees.