FINAL COPY
294 Ga. 640

S13A1429. BOYD et al. v. JOHNGALT HOLDINGS, LLC et al.

BLACKWELL, Justice.

This case concerns title to a small parcel of commercial property in Fulton County. Nathaniel and Lucy Boyd once owned the property, but according to the tax commissioner, they failed to pay their taxes,[1] and as a result, the property was sold in 1998 to National Tax Funding at a tax sale.[2] The next year, National Tax gave its tax deed to Southeast Diversified Development, Inc., and Southeast Diversified gave a promissory note and deed to secure debt back to National Tax. That security deed later was assigned to JohnGalt Holdings, LLC. Southeast Diversified eventually defaulted on the promissory note, and JohnGalt foreclosed on its security deed.

In the meantime, the Boyds had made efforts to redeem the property.[3] Before Southeast Diversified defaulted on the note, the Boyds entered into an agreement with Southeast Diversified, by which the Boyds were to make

---

[1] The Boyds contend that they did not, in fact, fail to pay their taxes. We need not resolve that dispute, however, to decide this case.

[2] See OCGA § 48-4-1 et seq.

[3] See OCGA § 48-4-40 et seq.

periodic payments to Southeast Diversified to redeem the property. The Boyds, however, failed to make all of the payments required under this agreement. After JohnGalt foreclosed on its security deed, JohnGalt gave notice to the Boyds of its intent to foreclose their right of redemption, and the Boyds entered into a new agreement with JohnGalt, by which the Boyds were to make periodic payments to JohnGalt to redeem the property. Again, the Boyds failed to make all of the payments required under their agreement with JohnGalt. Accordingly, in 2004, JohnGalt gave notice to the Boyds that they had defaulted and that their right of redemption was foreclosed. The Boyds then attempted to rescind their agreement with JohnGalt.

In 2005, the Boyds sued JohnGalt for trespass and ejectment, contending that they had redeemed the property. JohnGalt promptly answered the suit, but it did not then assert a counterclaim to quiet title. About three years later, JohnGalt sought leave to amend its pleadings and assert such a counterclaim, and the trial court gave it leave to do so. Upon the assertion of the counterclaim to quiet title, the trial court appointed a special master. The Boyds then filed a motion to dismiss the counterclaim, and JohnGalt filed a motion for summary judgment on the counterclaim. In 2009, the special master made his report,

2

concluding that JohnGalt had good title to the property by virtue of its foreclosure of the right of redemption. The trial court adopted the report of the special master and entered a judgment that quieted title in favor of JohnGalt. From that judgment, the Boyds appeal, asserting several claims of error.[4] We see no error, however, and we affirm the judgment below.

1. First, the Boyds contend that the trial court abused its discretion when it allowed JohnGalt to assert its counterclaim to quiet title three years after its original responsive pleading was filed. "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." OCGA § 9-11-13 (f). JohnGalt has never argued "oversight, inadvertence, or excusable neglect." But "when justice requires" "furnishes an

[4] The appeal has taken a long and twisting road to this Court. There apparently were problems with timely service of the report of the special master, and for that reason, the trial court vacated its original judgment in favor of JohnGalt and then reentered it. The Boyds timely filed a notice of appeal from the reentered judgment, see *Alston & Bird v. Mellon Ventures II,* 307 Ga. App. 640, 642 (1) (706 SE2d 652) (2010), as well as affidavits of indigence. The trial court denied pauper status to the Boyds without a hearing, and the Boyds also appealed from that denial. The trial court dismissed both appeals, and the Boyds appealed those dismissals to this Court. In *Boyd v. JohnGalt Holdings*, 290 Ga. 658 (724 SE2d 395) (2012), we transferred the appeal from the dismissals to the Court of Appeals, and in *Boyd v. JohnGalt Holdings*, 318 Ga. App. 866 (736 SE2d 459) (2012), the Court of Appeals reversed the dismissals and remanded for a hearing on the question of indigence. On remand, the trial court granted pauper status to the Boyds.

3

independent ground for setting up an omitted counterclaim. Thus, a trial court should grant leave to set up an omitted counterclaim 'when justice . . . requires' even though the other grounds, 'oversight, inadvertence, or excusable neglect' are not present." *White v. Fidelity Nat. Bank*, 188 Ga. App. 539, 540 (1) (373 SE2d 640) (1988) (citation omitted). See also *McKesson HBOC v. Adler*, 254 Ga. App. 500, 505 (4) (562 SE2d 809) (2002). "The determination of whether justice requires the grant of leave to set up an omitted counterclaim is a matter which addresses itself to the sound discretion of the trial court." *Hampton Island v. Asset Holding Co. 5*, 320 Ga. App. 880, 884 (2) (740 SE2d 859) (2013) (citation and punctuation omitted). Moreover, because the failure to plead a compulsory counterclaim can result in loss of that counterclaim forever, the courts generally should be forgiving when leave is sought to add compulsory counterclaims, at least so long as the plaintiff makes no showing of prejudice. *Williams v. Buckley*, 148 Ga. App. 778, 779 (1) (252 SE2d 692) (1979); *Kitchens v. Lowe*, 139 Ga. App. 526, 527-528 (1) (228 SE2d 923) (1976). See also 6 Wright, Miller, Kane, Marcus & Steinman, FEDERAL PRACTICE & PROCEDURE § 1430 (3d ed.).

As the Boyds concede, the counterclaim of JohnGalt to quiet title is a compulsory counterclaim in this case. See OCGA § 9-11-13 (a). And title to the property always has been an important issue in this case, insofar as the issue was presented squarely by the claims of the Boyds for trespass and ejectment, as well as by an earlier counterclaim of JohnGalt for trespass. As the trial court observed, a cause of action for quiet title had been "implicit throughout this case." See OCGA § 23-3-44 ("Proceedings quia timet may be used to remove clouds on title caused by equities of redemption following tax sales . . .."). Given the nature of their own claims, the defenses asserted by JohnGalt against those claims, and the original counterclaim of JohnGalt, the Boyds were not surprised or prejudiced unfairly by the late assertion of a counterclaim to quiet title. See *Kitchens*, 139 Ga. App. at 529 (1). See also *White*, 188 Ga. App. at 540 (1). The Boyds had ample time to respond to the late counterclaim. See *Kitchens*, 139 Ga. App. at 529 (1). And permitting the assertion of the late counterclaim fostered judicial economy. See *Daniel v. Daniel*, 250 Ga. App. 482, 486 (3) (552 SE2d 479) (2001). That the counterclaim was asserted only after the case had appeared on trial calendars, and that it was not included in the consolidated pretrial order, certainly cuts against allowing the late amendment,

but these circumstances alone are not dispositive. See *White*, 188 Ga. App. at 541 (1). Considering all of the circumstances, we cannot say that the trial court abused its considerable discretion when it gave JohnGalt leave to assert its omitted counterclaim to quiet title.[5] See *Daniel*, 250 Ga. App. at 486 (3); *White*, 188 Ga. App. at 541 (1); *Williams*, 148 Ga. App. at 779 (1); *Kitchens*, 139 Ga. App. at 529 (1). Cf. *Eudaly v. Valmet Automation (USA)*, 201 Ga. App. 497, 498 (1) (411 SE2d 311) (1991) (where it was "neither fair nor expeditious" to allow late counterclaims after the court's deadline for motions while using that same deadline as the basis for denying the plaintiff an opportunity to make any discovery as to the late counterclaims).

2. The Boyds complain that the trial court appointed a special master and required the parties to appear before him "for all further proceedings," without prior notice or opportunity to be heard. But the appointment of a special master was mandatory, and notice and a hearing were therefore unnecessary, because OCGA § 23-3-43 says that where, as here, the plaintiff in a conventional quiet title action requests a special master, "the court, upon receipt of the complaint,

---

[5] In light of this conclusion, it is not necessary to address JohnGalt's argument that its counterclaim was alternatively based on a claim of prescriptive title that did not ripen until 2008. See OCGA § 9-11-13 (e).

6

*shall* submit the same to a special master . . . ." (Emphasis supplied.) See also *Stephens v. Dept. of Transp.*, 170 Ga. App. 784, 786 (1) (318 SE2d 167) (1984) (statute providing that the superior court "shall make an order requiring" appearance "at a hearing before a special master" means that upon invocation of the statute, "[t]he superior court's ex parte appointment of a special master is *required*") (emphasis in original). As to the authority of the special master, OCGA § 23-3-66 provides in pertinent part that

> . . . the special master shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land, or any part thereof, which may be adverse to the title claimed by the petitioner, or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the judge of the court . . . .

So, the special master is authorized to handle every aspect of the quiet title claim. The trial court surely had this in mind when it required the parties to appear before the special master "for all further proceedings." And the special master understood that his jurisdiction was limited to the quiet title counterclaim, as he said in his report that "the only matter before the Special Master is JohnGalt's Counterclaim for Quiet Title as to the Boyds."

7

Consequently, we see no error in the trial court's order appointing a special master.

3. After his appointment, the special master entered a scheduling order that included a deadline for any motions to disqualify. The Boyds claim that this order required the parties to initiate disqualification, and it thereby shifted to the parties the special master's statutory, ethical, and constitutional obligations to self-report disqualifying matters. Although the Boyds timely objected to the appointment of a special master, they have not noted any timely objection to the scheduling order. Indeed, it appears that they did not object to the scheduling order either at the time of its entry or during the special master proceedings that followed, and they have, therefore, waived their objection to that order. See *In re Adams*, 292 Ga. 617 (1) (740 SE2d 134) (2013); *Spencer v. State*, 259 Ga. App. 664, 666 (577 SE2d 817) (2003). In any event, the setting of a deadline for the parties to file motions to disqualify does not violate any statute or rule. See Uniform Superior Court Rule 25.3. See also *Birt v. State*, 256 Ga. 483, 484 (2) (350 SE2d 241) (1986) (citing the predecessor to Rule 25.3). Nor does the setting of a deadline for motions prevent the special master from fulfilling his separate obligation to ensure that he is impartial and disinterested. Moreover, the

Boyds have failed to note anything in the record that could have required disqualification of the special master in this case.

4. The Boyds assert that the special master failed to apply the correct legal standard to JohnGalt's motion for summary judgment. Instead, the Boyds argue, the special master invaded the province of the factfinder by determining the credibility of witnesses whom he never saw testify, deciding disputed issues of fact, and making findings of fact in his report. But "[o]n appeal from the grant of summary judgment[,] this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Chester v. Smith*, 285 Ga. 401, 401 (677 SE2d 128) (2009) (citations and punctuation omitted). This "standard advances judicial economy by recognizing that, in summary judgment cases, the factual record is set and the appellate courts can, as well as the trial courts," apply the law to those facts. *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002). So, whether or not the special master improperly determined the credibility of witnesses and resolved disputed issues of fact, we can and will now proceed to independently examine the factual record and apply the law to

9

determine whether there are any genuine issues of material fact and whether JohnGalt was indeed entitled to judgment as a matter of law.[6]

5. (a) The special master found that the Boyds did not timely press a rescission of their agreement with JohnGalt. In order to effect a rescission, one must act promptly and adhere to the intent to rescind — without taking some action inconsistent with that intent — or risk waiver of the right to rescind. See *Conway v. Romarion*, 252 Ga. App. 528, 530-531 (1) (557 SE2d 54) (2001). Here, the Boyds asserted a clear intent to rescind by a letter dated June 17, 2004, almost immediately after they received notice of their alleged breach of the JohnGalt agreement.[7] So, it appears that the Boyds "asserted the intent to rescind in a timely fashion . . . ." Id. at 531 (1). And although their subsequent complaint in 2005 did not assert a claim for rescission, neither did it include a

---

[6] JohnGalt argues that the special master decides all issues as the arbiter of law and fact, see *Thompson v. Central of Ga. R.*, 282 Ga. 264, 265 (1) (646 SE2d 669) (2007), and that the findings of the special master adopted by the trial court will be upheld unless clearly erroneous, see *Crawford v. Simpson*, 279 Ga. 280, 281 (612 SE2d 783) (2005). But JohnGalt made the decision to move for summary judgment and, therefore, must accept the standards that apply to motions for summary judgment and their review on appeal. See *Ga. Canoeing Assn. v. Henry*, 263 Ga. 77, 78 (428 SE2d 336) (1993).

[7] JohnGalt presented evidence that the Boyds' default was effective on May 1, 2004, that a default letter was sent by certified mail on May 11, 2004 and was returned, and that another default letter was sent on June 14, 2004. In his deposition, Mr. Boyd testified that the Boyds never received the May 11 letter but did receive the June 14 letter.

claim for breach of contract or any other clear election to affirm the JohnGalt agreement. See id. at 531-532 (1). Cf. *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 146-147 (3) (524 SE2d 790) (1999) (complaint affirmed contract and sought damages without making any rescission claim). When JohnGalt initially raised the agreement (in its first motion for summary judgment), the Boyds raised rescission in response, and then again in their first amended complaint as a separate claim. As a result, it appears that the trial court erred in adopting the special master's determination that the Boyds waived any claim for rescission.

(b) The special master, however, also found an absence of any fraud or mutual mistake of fact such as would support a rescission. See *Jackson v. Wiley*, 193 Ga. App. 491, 492 (388 SE2d 395) (1989). The Boyds insist that there is sufficient evidence in the record to support their fraud claim. They argue that slight circumstances may be sufficient to prove fraud, see OCGA § 23-2-57, and that "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." OCGA § 23-2-53. According to the Boyds, when they went to JohnGalt's office on October 24, 2003 and explained to Claire Fishman —

11

JohnGalt's general counsel and a CPA — that they had entered into an agreement with Southeast Diversified, Fishman warned that they would lose the property if they did not pay more money, and she did not provide them with more information. But Fishman did not do any legal work for the Boyds and was not paid by them, and as Mr. Boyd testified, she advised them to hire a lawyer. So, the Boyds did not have any fiduciary relationship with Fishman that would impose on her a duty of disclosure and that would support their fraud claim.[8] See *Bogle v. Bragg*, 248 Ga. App. 632, 637-638 (1) (548 SE2d 396) (2001). Nor are there any other "particular circumstances" that would give rise to a duty to disclose on the part of Fishman, as nothing in the record suggests that she intentionally concealed any fact from the Boyds, hoping to obtain a benefit that could be secured only by silence and concealing the truth. See *Miller v. Lomax*, 266 Ga. App. 93, 98 (2) (b) (596 SE2d 232) (2004) (quoting this Court's interpretation of the phrase "particular circumstances" in *Reeves v. B.T. Williams & Co.*, 160 Ga. 15, 21 (127 SE 293) (1925)); *Karpowicz v. Hyles*, 247 Ga. App.

---

[8] We note that Fishman fulfilled her ethical duty as a lawyer dealing on behalf of a client with an unrepresented person not to "give advice other than the advice to secure counsel, if a lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." Ga. Rule of Professional Conduct 4.3 (b).

292, 297 (6) (543 SE2d 51) (2000). To the extent that the Boyds argue that Fishman concealed their legal rights, that concealment is not relevant, as any such failure to disclose an opinion as to a matter of law or as to the legal effect of a contract did not amount to the "[s]uppression of a material *fact*" and could not serve as the basis for a fraud action.[9] See *Howard v. Barron*, 272 Ga. App. 360, 362-363 (1) (612 SE2d 569) (2005); *Gignilliat v. Borg*, 131 Ga. App. 182, 183 (3) (205 SE2d 479) (1974).

(c) The Boyds further complain of the special master's conclusion that the terms of the JohnGalt agreement were "tantamount to waivers of any alleged irregularities related to the processes that came before the [JohnGalt] Agreement (i.e., levy, execution, transfers of the Tax Deed, service of the notice of foreclosure of the right of redemption, etc.)."[10] It is true that nothing in the agreement constitutes a waiver of preceding irregularities for all purposes. For

---

[9] The Boyds also fail to show from evidence in the record that JohnGalt committed a fraud by surprise. See OCGA § 23-2-54 ("Anything which happens without the agency or fault of the party affected by it, tending to disturb and confuse his judgment or to mislead him, of which the opposite party takes an undue advantage, is in equity a surprise and is a form of fraud for which relief is granted.").

[10] The Boyds claim, among other things, that they were not informed of any tax delinquency, that they did not receive notice prior to the tax sale, and that they were not aware of any deficiency in their title until October 2000 when they were denied a permit to make improvements to the property.

example, the Boyds could conceivably raise these matters in a suit against the sheriff based on alleged defects in his implementation of the tax sale process. See *Saffo v. Foxworthy, Inc.*, 286 Ga. 284, 289 (4) (687 SE2d 463) (2009). But the JohnGalt agreement did effectively waive any irregularities as against JohnGalt,[11] and that waiver may in part amount to a reasonable recognition that defects in the tax sale process did not render the tax sale or deed void and did not affect JohnGalt's title as a bona fide purchaser. See id. Moreover, as the special master determined, the parties had the freedom to contract around the statute providing for redemption because the agreement neither injures others nor affects the public interest.[12] See OCGA § 1-3-7; *City of Atlanta v. Hotels.com*, 289 Ga. 323, 327 (2) (710 SE2d 766) (2011) ("one is free to enter into an agreement to reimburse another for a tax obligation, as long as the State

---

[11] The JohnGalt agreement provided, among other things, that the Boyds had received notice of foreclosure of their right of redemption, that their payments pursuant to the Southeast Diversified agreement would not be applied to the redemption amount, that JohnGalt was not responsible for the recovery of any funds paid by the Boyds to Southeast Diversified, and that if the full redemption amount of $6,681.07 was not paid as scheduled, the right to redeem would be foreclosed and forever barred.

[12] This appears to be consistent with foreign authority. See *Varsolona v. Breen Capital Svcs. Corp.*, 853 A2d 865, 874-875 (III) (A) (N.J. 2004), aff'g 822 A2d 663 (N.J. Super. 2003); *Bateman v. Rice*, 653 SW2d 951, 952-953 (Tex. App. 1983) ("an agreement between the tax purchaser and the owner, that the latter shall be allowed additional time for redemption[,] is valid and may be enforced") (quoting Black on Tax Titles § 354 (2nd Ed.)).

14

ultimately receives the proper amount of tax") (citations and punctuation omitted); *Livingston v. Hirsch*, 172 Ga. 854, 854 (1) (159 SE 253) (1931) (a statutory right of redemption in the mortgagor could be waived in a security deed); *Bryan v. MBC Partners*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000).

(d) The Boyds contend that before they signed the JohnGalt agreement, they had already paid Southeast Diversified more than the amount required under the redemption statutes and, therefore, had redeemed the property as a matter of law. But when an interest in the property was conveyed to Southeast Diversified in September 1999, Southeast Diversified executed the promissory note and security deed that were eventually assigned to JohnGalt. Under OCGA § 48-4-42, the amounts required for redemption must be paid "to the purchaser at the tax sale or to the purchaser's successors." "This purpose is defeated if payment is made to just anyone in the chain, for the owner at the time is alone entitled." *Herrington v. Old South Investment Co.*, 222 Ga. 428 (150 SE2d 623) (1966). At the time of the Boyds' payments to Southeast Diversified, the grantee of the security deed and its successors held legal title to the property and would be deprived of their security if the amounts paid to their grantor, Southeast

15

Diversified, were deemed proper payment of the redemption amount. See id. For this reason, the Boyds cannot be considered to have redeemed the property by the payments they made to Southeast Diversified. Moreover, assuming that the Boyds could have properly paid the redemption amount to Southeast Diversified, the Southeast Diversified agreement would have superseded their statutory rights of redemption. And even if JohnGalt were initially bound by the Southeast Diversified agreement and required to accept payments from the Boyds under that agreement, the parties substituted the JohnGalt agreement for the Southeast Diversified agreement, as they were free to do.[13] See Division 5 (c), supra.

(e) Accordingly, the Boyds have failed to demonstrate that there was a genuine issue of material fact as to John Galt's quiet title counterclaim, and we conclude that summary judgment in favor of John Galt was warranted. See *Ritchie v. Metro Tax Investors*, 280 Ga. 79, 81 (623 SE2d 498) (2005).

---

[13] Assuming both that the Boyds could have paid the redemption amount to Southeast Diversified and that their rights of redemption were governed solely by statute rather than the agreements that they executed, they nevertheless are mistaken in their claim that through Fishman's testimony, JohnGalt admitted that the redemption amount before execution of the JohnGalt agreement was less than the $7,100 the Boyds had paid to Southeast Diversified. Instead, Fishman indicated that she did not know the amount of all the charges that made up the total redemption amount required by Southeast Diversified.

16

6. The Boyds further assert that the special master denied their motion to dismiss without considering their arguments because, they say, he never issued a written order that addressed or expressly ruled on their detailed defenses to John Galt's quiet title counterclaim or the exercise of equitable jurisdiction. But the special master's report, having been adopted by the trial court, sufficiently informs us of "the basis for the trial court's judgment." *Nelson v. Ga. Sheriffs Youth Homes*, 286 Ga. 192, 193 (686 SE2d 663) (2009). And the provision in OCGA § 23-3-66 that the special master make a report of his findings to the judge does not mandate a separate finding or conclusion as to each defense. See *Mackey v. Fed. Nat. Mtg. Assn.*, 294 Ga. App. 495, 497 (4) (669 SE2d 397) (2008). Moreover, the Boyds have failed to show how they were harmed by the absence of separate, written rulings on each of their defenses, as they have not specified any defenses on appeal other than those we have disposed of above. See *Humphreys v. State*, 287 Ga. 63, 78 (8) (a) (694 SE2d 316) (2010) ("The burden is on the appellant to show harm as well as error.") (Citation and punctuation omitted).

7. The Boyds next claim that the special master erred when he awarded and allocated his own fees, and the trial court erred, they contend, when it

17

accepted and approved that compensation without notice or a hearing. The Boyds were ordered to pay 25% of $18,700 in fees. OCGA § 23-3-68 requires the court to fix a reasonable compensation to be paid to the special master and to be taxed in the court's discretion as part of the costs. The statute neither requires a hearing nor prohibits allocation of the fees. Because "the reasonableness of fees and costs is a matter within the trial court's discretion, the appellate court will not interfere with the decision of the trial court unless there has been an abuse of that discretion." *Simmons v. Community Renewal and Redemption*, 286 Ga. 6, 9 (4) (685 SE2d 75) (2009) (citation omitted). As with similar equitable provisions of the law, this discretion reaches to a decision to apportion costs between the parties. See *Lowe v. Byrd*, 148 Ga. 388, 393 (5) (96 SE 1001) (1918). And although the allocation of costs is not controlled by which party prevails, see id., the fact that the Boyds did not prevail on the quiet title counterclaim supports the court's exercise of discretion to apportion to them at least part of the special master's fees. See *Brown v. Parks*, 190 Ga. 540, 549 (8) (9 SE2d 897) (1940). Cf. *Hamilton v. DuPre*, 103 Ga. 795 (30 SE 248) (1898) (cited by the Boyds and distinguished by *Lowe*, 148 Ga. at 393 (5) and by *Edwards v. United Food Brokers*, 196 Ga. 241, 251-252 (2) (26 SE2d 348)

18

(1943) as an isolated instance where division of expenses was an abuse of discretion because the appellant was wholly blameless and because of other extreme facts). Accordingly, the Boyds have failed to show an abuse of discretion, and the award of compensation to the special master will not be disturbed. See *Simmons*, 286 Ga. at 9 (4).

8. Last, the Boyds contend that the trial court erred when it granted a temporary restraining order (TRO). This contention is "moot, however, because the TRO [was] superseded by [an] interlocutory injunction, and the [Boyds] do not argue that any alleged error in entering the TRO somehow infected the interlocutory injunction . . . ." *Pittman v. State of Ga.*, 288 Ga. 589, 591 (1) (706 SE2d 398) (2011).

Judgment affirmed. All the Justices concur.

Decided March 3, 2014.

Title to land. Fulton Superior Court. Before Judge Brasher.

Francis X. Moore, Hillis, Robison & Coffelt, Lindsey W. Hillis, for appellants.

Schreeder, Wheeler & Flint, Daivd H. Flint, J. Carole Thomnpson Hord, for appellees.