**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 16, 2015**

# In the Court of Appeals of Georgia

A15A1097. TALBOT CONSTRUCTION, INC. v. TRIAD
    DRYWALL, LLC.

ELLINGTON, Presiding Judge.

This case concerns a construction subcontract between Appellee Triad Drywall, LLC ("Triad") and Appellant Talbot Construction, Inc. ("Talbot"). Alleging Talbot never compensated Triad for services rendered, Triad filed suit in the Superior Court of Forsyth County for breach of contract, unjust enrichment, and quantum meruit. Talbot answered without asserting a related claim against Triad for breach of contract and later sought leave to assert the omitted compulsory counterclaim by amendment. After a hearing, the trial court denied Talbot's motion for leave to add the counterclaim. Pursuant to this Court's grant of Talbot's application for interlocutory review, Talbot appeals, contending Triad made no showing that it would be

prejudiced by the addition of the counterclaim, and, therefore, the trial court abused its discretion in denying Talbot leave to assert the omitted compulsory counterclaim under the "when justice requires" provision of OCGA § 9-11-13 (f).[1] For the reasons explained below, we vacate the trial court's ruling and remand this case for reconsideration of Talbot's motion for leave to set up its omitted counterclaim.

Talbot avers that on March 2, 2011, it entered into a contract with Wal-Mart Stores, Inc. ("Wal-Mart"), whereby Talbot agreed to provide labor, equipment, and materials for a remodeling project at a Wal-Mart store in Snellville. In consideration for Talbot's remodeling work on the project, Wal-Mart agreed to pay Talbot $924,098. A key component of the project included the removal of old drywall and the installation of new drywall. According to Wal-Mart's schedule, Talbot had only sixty days to complete all of the remodeling work, and it could only work during specified times when the store was closed to the public. Additionally, Talbot was required to proceed in a very specific sequence because Wal-Mart did not want the remodeling project visible to its customers or for the construction to interfere with its daily store operations.

---

[1] "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." OCGA § 9-11-13 (f).

The project was scheduled to commence on April 17, 2011. On that day or the next, Talbot's original drywall subcontractor notified Talbot it would not be able to perform the drywall replacement as they had agreed. Talbot's project manager contacted Triad on April 19, 2011, to discuss having Triad take over the drywall work. Talbot agreed to pay Triad $29,000 and, due to the time constraints, Triad agreed to commence work that night. Talbot sent Triad a written subcontract for the work, and Triad's project manager executed the subcontract on April 20, 2011. Triad did not return the subcontract to Talbot until after April 26, 2011, however, and did not commence the project until that day. According to Talbot, other aspects of the remodeling work, such as priming and painting, trim installation, and other interior finish work, could only proceed efficiently and in accordance with the contract requirements if Triad completed the drywall work in a timely manner, which it failed to do. Triad's failure to perform the drywall replacement on schedule prevented Talbot from completing the overall remodeling project on time. Because the project as a whole fell behind schedule, Wal-Mart defaulted Talbot, and terminated its contract. Wal-Mart completed the unfinished work and back-charged Talbot $73,763.80 for its costs and expenses.

On January 26, 2012, Triad commenced a suit against Talbot, claiming, inter alia, that Talbot owed it $41,251 under the subcontract. Talbot answered without asserting any counterclaim against Triad. Over two years after filing its answer and defenses, Talbot filed an amended answer to Triad's complaint and averred as an additional affirmative defense that Triad had materially breached its subcontract by failing to perform all conditions precedent to payment. In addition, Talbot contended Triad's claims were barred or had to be reduced by a setoff of Talbot's damages that were directly and proximately caused by Triad's breach of its subcontract. Talbot then filed a motion for leave to set up its omitted counterclaim pursuant to OCGA § 9-11-13 (f). Talbot argued that Triad would not be prejudiced thereby and that justice required that its amendment be allowed. Triad opposed Talbot's motion, arguing Talbot was not entitled to belatedly assert its counterclaim because it failed to exercise due diligence in asserting the counterclaim in a timely manner and it (Triad) would be prejudiced by the proposed amendment.

Under the Civil Practice Act, "[c]ompulsory counterclaims, as well as affirmative defenses, must be asserted in a defendant's answer or responsive pleading." (Citation omitted.) *Riggio v. Lawson*, 204 Ga. App. 774, 775 (1) (420

4

SE2d 613) (1992). See OCGA § 9-11-13 (a).[2] Generally, "[t]he failure to plead a compulsory counterclaim bars a party from asserting that claim in a subsequent action." *Kitchens v. Lowe*, 139 Ga. App. 526, 527 (1) (228 SE2d 923) (1976). OCGA § 9-11-13 (f), however, allows a pleader "by leave of court" to set up a counterclaim that was omitted from its answer "through oversight, inadvertence, or excusable neglect, or when justice requires[.]" As we explained in *Blount*,

> [t]he courts should be very liberal in allowing amendments to include compulsory counterclaims, . . . where the pleader has not been guilty of inexcusable neglect, or has not by reprehensible conduct deprived himself of any claim to special consideration by the court. The motion

---

[2] *Compulsory counterclaims*. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought an action upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Code section, or (3) the claim is not within the jurisdiction of the court.

OCGA § 9-11-13 (a).

5

should be made promptly and may be denied for laches or lack of good faith. . . . Before a delayed filing of a counterclaim is allowed, the court should require the submission of evidence and make a finding therefrom as to whether the delay was occasioned by oversight, inadvertence or excusable neglect. . . . It should appear, too, that the filing of the counterclaim when tendered works no prejudice against the plaintiff.

(Citations and punctuation omitted.) *Blount v. Kicklighter*, 125 Ga. App. 159, 161-162 (3), (4) (186 SE2d 543) (1971). Because an omitted compulsory counterclaim may be otherwise barred, "as a general rule leave to amend and set up a counterclaim shall be given freely, but this does not dispense with the necessity of showing that justice so requires." Id. at 161 (4). "The determination of whether justice requires the grant of leave to set up an omitted counterclaim is a matter which addresses itself to the sound discretion of the trial court." (Citation and punctuation omitted.) *Boyd v. JohnGalt Holdings*, *LLC*, 294 Ga. 640, 642 (1) (755 SE2d 675) (2014). We review the trial court's ruling for abuse of discretion. Id.[3]

---

[3] See also *Clairmont Foods, Inc. v. Huddle House*, *Inc.*, 142 Ga. App. 171 (1) (235 SE2d 635) (1977) ("As we have previously pointed out in construing [OCGA § 9-11-13 (f)], the trial judge is vested with discretion which will not be controlled absent a legal abuse.").

6

At the hearing on Talbot's motion for leave to file its counterclaim, the trial court stated the controlling legal principle as follows: "compulsory counterclaims may not be added by amendment where the defendant has knowledge of the claims at the time the defensive pleadings were prepared and filed."[4] The trial court found that Talbot did have knowledge of its counterclaim at the time it filed its answer and denied the motion for leave to amend.

Talbot contends, because the failure to plead a compulsory counterclaim can result in the loss of that claim forever, justice requires a trial court to grant a defendant leave to add a compulsory counterclaim if the plaintiff makes no showing of prejudice from the proposed amendment, citing *Boyd v. JohnGalt Holdings*, *LLC*, 294 Ga. 640 (1) (755 SE2d 675) (2014). Talbot contends Triad made no such showing of prejudice in this case and contends the trial court abused its discretion in failing to allow the amendment without having first determined whether Triad would actually be prejudiced by the belated addition of Talbot's counterclaim. Without the

---

[4] See *Haire v. Suburban Auto Body, Inc*., 204 Ga. App. 16, 17 (418 SE2d 163) (1992) ("[T]his court has held that compulsory counterclaims may not be added by amendment where the defendant has knowledge of the claims at the time the defensive pleadings were prepared and filed in the first instance.") (citation omitted).

addition of its counterclaim to this action, Talbot contends it "will lose its counterclaim forever, and it will never have any legal remedy against Triad."

In *Boyd*, the Supreme Court of Georgia emphasized that the "when justice requires" provision of OCGA § 9-11-13 (f)

> furnishes an independent ground for setting up an omitted counterclaim. Thus, a trial court should grant leave to set up an omitted counterclaim when justice requires even though the other grounds, oversight, inadvertence, or excusable neglect[,] are not present.

(Citation and punctuation omitted.) 294 Ga. at 641 (1). "Moreover, because the failure to plead a compulsory counterclaim can result in loss of that counterclaim forever, the courts generally should be forgiving when leave is sought to add compulsory counterclaims, at least so long as the plaintiff makes no showing of prejudice." (Citations omitted.) Id. at 642 (1).[5]

---

[5] See also *Kitchens v. Lowe*, 139 Ga. App. 526 (228 SE2d 923) (1976) (The trial court did not abuse its discretion in allowing the defendant to add its omitted compulsory counterclaim to the plaintiff's suit on account for fertilizer, where the defendant's claim for damages caused by allegedly defective fertilizer was a compulsory counterclaim and was so interrelated as to properly be construed together with the plaintiff's claim and where the plaintiff was not surprised or prejudiced by the belatedly asserted counterclaim.).

In *Boyd*, the plaintiffs filed an action for trespass and ejectment after the defendant foreclosed their right of redemption with regard to a small parcel of commercial property, based on the plaintiffs' default on an agreement to make specified payments to redeem the property. *Boyd*, 294 Ga. at 640-641 (1). Initially, the defendant timely answered, but did not then assert a counterclaim to quiet title. Id. at 641. Three years later, the defendant sought leave to add its counterclaim to quiet title by amendment, and the trial court granted leave to do so. Id. Ultimately, the trial court entered judgment that quieted title in favor of the defendant against the plaintiffs. Id. In holding the trial court did not abuse its considerable discretion when it granted the defendant leave to add its counterclaim, the Supreme Court concluded title to the property had been a central issue since the beginning of the overall case, such that the defendant's claim to quiet title was inextricably intertwined with the plaintiffs' claims. Id. at 642 (1). Because a quiet title claim had been implicit throughout the litigation, the plaintiffs were not surprised or unfairly prejudiced by the defendant's late assertion of the compulsory counterclaim to quiet title, and inclusion of the claim in the pending case fostered judicial economy. Id.

Similarly, in this case, the record shows that Triad knew of the basis for Talbot's breach of contract counterclaim, as the issue presented involves the terms

9

and conditions of the subcontract that is the subject of Triad's own claims and involves the same facts, transactions, and circumstances concerning Triad's performance regarding the drywall replacement. Although Triad argues broadly it will be prejudiced if Talbot is allowed to add its counterclaim in that it may be forced at "great expense" to "depose additional witnesses and other subcontractors,"[6] the existing record is devoid of any evidence regarding the magnitude of the expense or other hardship that Triad will face in defending against Talbot's claim. More importantly, the record is devoid of any evidence that *late* assertion of the claim will cause significantly greater expense than *timely* assertion would have caused. Absent such a particularized showing of prejudice on the record by Triad,[7] we cannot evaluate whether the trial court properly exercised its discretion in determining whether to grant or deny Talbot's motion for leave to set up its omitted counterclaim or, conversely, whether the court considered the first three exceptions in OCGA § 9-

---

[6] See *Eudaly v. Valmet Automation*, 201 Ga. App. 497, 498 (1) (411 SE2d 311) (1991) (It was "neither fair nor expeditious" and was an abuse of discretion to allow the defendant to file a late counterclaim after the time for discovery expired, while at the same time denying the plaintiff's motion to reopen discovery as to those late counterclaims.).

[7] See *Boyd*, 294 Ga. at 642 (1) (The courts generally should be forgiving when leave is sought to add a compulsory counterclaim "at least so long as *the plaintiff* makes no showing of prejudice.") (citations omitted; emphasis supplied).

11-13 (f) that justify granting leave (that is, "oversight, inadvertence, or excusable neglect") to the exclusion of the fourth (that is, "when justice requires"). As an appellate court, we afford great deference to a trial court's decision in this regard,[8] but we cannot properly review a decision to deny leave to add a compulsory counterclaim where, as in this case, it appears the trial court stopped short of considering all of the provisions in OCGA § 9-11-13 (f).

For all of the foregoing reasons, the trial court's ruling denying Talbot leave to set up its omitted compulsory counterclaim is vacated, and we remand the case for the trial court to reconsider Talbot's motion.

*Judgment vacated and case remanded. Dillard and McFadden, JJ., concur.*

---

[8] *Boyd*, 294 Ga. at 642 (1); *McKesson HBOC v. Adler*, 254 Ga. App. 500, 506 (4) (562 SE2d 809) (2002) ("Whether to allow such a filing *even after the requisite showing is made* is within the discretion of the trial court and will not be disturbed absent abuse.") (citation and punctuation omitted; emphasis supplied).